[No. 756.  Decided April 7, 1893.]

KATE TOOTLE *et al.*, *Appellants*, v. THE FIRST NATIONAL BANK OF PORT ANGELES, *Respondent.*

CORPORATIONS — PLEA OF ULTRA VIRES — WHEN UNAVAILABLE.

Where a banking corporation has received and retained the benefits of a transaction it cannot set up the plea that the contract was *ultra vires.*

*Appeal from Superior Court, Clallam County.*

Action by Kate Tootle, W. E. Hosea, W. W. Wheeler, Joshua Motter and Frances S. Tootle, partners as Tootle, Hosea & Co., against the First National Bank of Port Angeles, to recover the sum of $783.33 and interest.

The facts are as follows: On April 20, 1891, the Port Angeles Mercantile Company was indebted in a sum exceeding $7,000, included in which sum was its indebtedness to plaintiffs, amounting to $759.38. A portion of the indebtedness had been guaranteed by the cashier of the defendant, a national bank. On that date the B. F. Schwartz Co., a corporation, which was the owner of the mercantile company, applied to the defendant for a loan of $2,500. The defendant loaned the money to the Schwartz Co., and took therefor the two notes of B. F. Schwartz, president of that company. Said company, by its president and secretary, conveyed the property of said mercantile company, by bill of sale, to said Schwartz, and said Schwartz, as a part of the same transaction, conveyed the same by bill of sale to the defendant. The money loaned was left with the bank and was paid out by it to certain creditors of the mercantile company, under Schwartz's direction. After these transfers Schwartz remained in possession and control of the property until about June 9, 1891, buying and selling goods and applying the proceeds

to the payment of expenses and for goods. About that date, and before the notes matured, the defendant notified him that he must pay the notes. Certain creditors of the mercantile company threatened to attach the property, and the defendant bank proposed to all the creditors that it would take the property and pay fifty cents on the dollar of all claims against the company. Schwartz then turned over to the bank all of said property, on the promise of its president in consideration therefor to pay and settle all the debts of said mercantile company, amounting to about $7,000, including the claim of these plaintiffs, of which the bank had notice. The bank further promised to cancel and return said notes to Schwartz, on which about $2,000 was still to become due. The property turned over was worth about $7,000, or $7,500. The defendant bank sold said property and canceled and returned said notes, but did not pay the other indebtedness. The claim of plaintiffs not being paid, on September 2, 1891, they recovered judgment against the Schwartz company for the sum of $759.38, and $28.95 costs, and thereafter issued execution, which, being unsatisfied, became the basis of proceedings supplemental in behalf of the plaintiffs against the bank as debtor of the Schwartz company, which resulted in the court directing plaintiffs to sue the bank to recover upon its indebtedness to the Schwartz company. On the trial of the cause the court, on motion of the defendant bank, granted a non-suit against plaintiffs, from which judgment they appeal.

*Ballinger & Ballinger*, for appellants.

The opinion of the court was delivered by

DUNBAR, J.—We think there can be no question that the bill of sale of the property of the Mercantile Company was intended as a mortgage to secure the payment of the

notes.  This is apparent both from the testimony and from the answer, and the only serious question in the case to consider is whether the bank is bound by the action of its officers in the transaction upon which this suit is based. This fact seems certain from the testimony, viz., that the bank has received property worth about $7,000, when its claim was only $2,000.   It is not necessary to decide whether or not the contract was *ultra vires*, for it was not immoral; it was fully performed by the other party, and the bank received and retained the benefits, and in such a case the plea of *ultra vires* is unavailing.  2 Morse on Banks and Banking (3d ed.), § 740.

"The doctrine of *ultra vires* as a defense has died so hard that it is well to repeat the proposition which seems to be fully established by the more recent decisions, that where a contract has in good faith been fully performed either by the corporation or the other party, the one who has thus received the benefit will not be permitted to resist its enforcement by the plea of mere want of power.   Time and again corporations have been held estopped to plead *ultra vires* to an action on the contract performed by the other parties where the corporation has received the benefit, although clearly beyond its powers."  2 Beach, Private Corp., § 425.

To the same effect is 2 Morawetz on Private Corporations (2d ed.), § 688, and Green's Brice's Ultra Vires, p. 729, note *a*.

The doctrine of *ultra vires*, when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong. *Railway Co. v. McCarthy*, 96 U. S. 258.   This rule is so well established that it is the work of supererogation to quote authorities to sustain it.

While it is not shown that the contract to pay this indebtedness was entered into by resolution of the trustees of the bank, it does plainly appear to our minds from the

testimony that the trustees were in consultation about the matter; that the business was done in the bank, through its president and cashier, the men who practically do the business of the bank; and even if it did not authorize the transaction it has endorsed it by receiving and appropriating the benefits flowing from the transaction, and it would be against conscience and right to allow it to repudiate the contract and still retain the benefits.

We think the plaintiffs made out a *prima facie* case, and were entitled to a judgment thereon, and that the court erred in sustaining defendant's motion for judgment. The judgment will, therefore, be reversed, and the cause remanded for a new trial in accordance with this opinion, with costs to appellants.

STILES, SCOTT and ANDERS, JJ., concur.

HOYT, J. (*dissenting*).—I am unable to find from the record that the respondent has received and retained the goods, or that it received any goods in consideration of its alleged promise to pay the debts of the corporation or partnership. I am, therefore, compelled to dissent. I think that the judgment should be affirmed.