[No 2103. Decided June 6, 1896.]

## WHEELER, OSGOOD & Co., *Appellant*, v. THE EVERETT LAND COMPANY, *Respondent*.

CORPORATIONS — CONTRACT OF SURETYSHIP — CONSENT OF DIRECTORS — PRINCIPAL AND SURETY — ESTOPPEL — CONTRACTOR'S BOND.

A lumber company which is empowered by its charter to carry on the manufacture and sale of lumber in its various forms, including everything connected with the manufacture and sale of lumber, and to do anything and all kinds of business allowed to corporations by the laws of the state, is authorized to become surety upon the bond of a contractor to whom it furnishes building material, when such is the custom of manufacturers of lumber in the same locality.

The fact that a bond has been executed by a corporation without the direct authority of a resolution of its board of trustees will not invalidate the bond, when it appears that a majority of the trustees were in consultation about it prior to its execution and consented thereto.

A surety upon a building contractor's bond is not released from liability by reason of alterations in the specifications after the execution of the bond, when the bond referred to the specifications which in terms permitted the making of alterations, and when the surety, with knowledge of the proposed changes, agreed to furnish the necessary mill work therefor.

The provision in a building bond requiring the contractor to furnish the materials for the building must be construed as meaning that payment therefor is to be made by himself and not by the obligee, and, upon his failure to fulfill the terms of the bond in that respect, there is such a breach as warrants action against his surety.

Appeal from Superior Court, Snohomish County.— Hon. JOHN C. DENNEY, Judge.   Affirmed.

*Hudson & Holt,* for appellant.

*Francis H. Brownell,* for respondent.

The opinion of the court was delivered by

SCOTT, J.—This was an action to foreclose a lien for materials sold by appellant to defendant Grant, as

contractor, for use in the construction of a hotel owned by the Everett Land Company. The contractor and a number of other persons were made co-defendants, but none of them except respondent appeared in the action. The respondent answered denying most of the allegations of the complaint and in addition thereto set up as an affirmative defense and counterclaim that appellant was surety upon a bond given by the contractor to secure the erection of the building, the condition of which was as follows:

" The condition of this obligation is such that if the said T. L. Grant shall erect, finish and complete all the mason work, carpenter and joiner work, tin work, iron work, painting and glazing for a three-story frame building designed for a hotel to be erected in the City of Everett, Washington, and according to plans and specifications, and complete the work in a good, substantial and workmanlike manner, and furnish all materials, then this obligation shall be void; otherwise it shall be and remain in full force and virtue;"

and that by reason thereof appellant was not entitled to a lien upon the building and was also liable to the respondent for a sum expended for materials by it to complete the building, the contractor having failed so to do; and asked for a judgment for such sum.

The appellant resisted the matters set up in said defense on three grounds: It denied that it had any authority to become a surety; claimed that it was released from liability by reason of an alteration in the specifications made after the bond was executed, which provided for an addition to the hotel; and it further contended that the provision in the bond that the contractor was to furnish the materials for the building did not mean or provide that the contractor should pay for them.

The court found that appellant was entitled to a

judgment against the contractor Grant for a balance due upon its claim for materials furnished him; that the bond given by the contractor upon which appellant was surety was a valid obligation and binding upon appellant; that the conditions of the bond had been broken and that the respondent had been damaged thereby in the sum of $756.72, and was entitled to judgment against the contractor and appellant therefor. Whereupon this appeal was taken.

As to the claim that appellant had no authority to become a surety upon the bond, it is conceded that there was no statute prohibiting it from so doing, and the contention is based upon a want of power to do so under its articles of incorporation. Said articles provided that appellant should be authorized:

" To carry on the manufacture and sale of lumber in its various forms, including sash, doors, blinds and kindred work, furniture and wooden ware, sawing and planing lumber and everything connected with the manufacture and sale of lumber, and to purchase and sell timber and timber lands, and to do anything and all kinds of business allowed to corporations, as provided for under the laws of Washington Territory."

It was proved upon the trial that it was customary for manufacturers of lumber upon Puget Sound to go upon the bonds of contractors in order to sell them the material which they should require for the construction of buildings, and in this case that appellant was enabled to sell its material to the contractor only by becoming a surety for him upon the bond in question, the contractor having refused to purchase such material of appellant except upon that condition. As against this appellant contends that the proof did not show that it was customary for corporations engaged in the manufacture and sale of lumber and building material to become such sureties. But this did not

matter, for appellant was obliged to compete with all persons engaged in like undertakings. Unless it could comply with this custom it would be prevented from doing considerable business and the management of the affairs of the company in the sale of its lumber would be greatly impeded and the object of its incorporation largely defeated. Much of the business of the country is done by corporations and it would be contrary to a sound public policy to impose limitations upon them in the control of their affairs not clearly imposed by statute or their articles of incorporation. Such being the custom, and it having been necessary for appellant to conform thereto to sell the material, we think it had authority to become surety under the provision aforesaid, authorizing it to carry on the manufacture and sale of lumber and everything connected therewith and to do anything and all kinds of business allowed to corporations, as provided for under the laws of the territory. It thereby asserted to itself the right to do all kinds of business connected with the manufacture and sale of lumber, and to do every and all kinds of business allowed to corporations under the laws of the territory, using the most general language under the apparent desire and intention expressed to the public that it should not be hampered and restricted in any way in the conduct of its affairs. And as appellant in consequence of going upon the bond obtained direct and substantial benefits by reason of the sale of a large amount of material and as the bond was accepted and relied upon in good faith by the respondent, appellant should not be allowed to invoke the doctrine of *ultra vires* and so escape liability. In construing the powers of corporations the tendency is toward a more liberal interpretation than formerly, and in holding that appellant

had authority to execute this bond under the circumstances we are but following several prior decisions of this court (*Tootle v. First National Bank,* 6 Wash. 183, 33 Pac. 345; *Allen v. Olympia Light and Power Co.,* 13 Wash. 307, (43 Pac. 55), and are sustained by a number of cases cited by respondent from other states.

It is further contended that there was no direct authority shown by any resolution of the board of trustees authorizing appellant to execute this bond, but it appears that a majority of the trustees were in consultation about it prior to its execution and consented thereto, and if the doctrine of *ultra vires* will not avail appellant in this instance, it should not be allowed to successfully resist upon the ground of a want of formality in the execution of the bond, and this last contention could amount to no more than this.

As to the next ground, it appears that after the construction of the building had been entered upon the respondent desired to make an addition thereto, and entered into negotiations with the contractor therefor, and that the contractor submitted to appellant the specifications for such addition, and appellant agreed to furnish the contractor the necessary mill work for it, and thereby had full knowledge of it and consented thereto, and was benefited thereby in consequence of being enabled to sell a larger amount of material. Also, the specifications in existence when the bond was executed contained the following provision:

" The company reserves the right to alter or modify the design, and to add to, or diminish from, the contract amount, and in case of any difference of expense, it is to be made in ratio or proportion such work may bear to the whole work agreed to be performed. Such change shall not invalidate or render void the contract."

The bond contained a direct reference to these specifications, and this defense failed upon two grounds; first, without any authority in the bond or specifications for the making of such alteration, as the same was made with the knowledge and consent of appellant as a part of the construction of the building, appellant would be estopped from claiming a release from liability upon the bond in consequence thereof, and we are of the opinion also that the bond, by adopting the specifications which provided for alterations sufficiently authorized the addition which was made, it being but a small part of the whole building.

The last contention that the provision in the bond requiring the contractor to furnish the material did not mean to pay for it, and that therefore there had been no breach of the bond, is not well founded. The true meaning and intent of the provision was certainly that the contractor should pay for the material and not that he should simply supply it, and that the respondent should pay for it.

Affirmed.

HOYT, C. J., and ANDERS, DUNBAR and GORDON, JJ., concur.