[No. 15184. Department Two. April 14, 1919.]

UNITED STATES FIDELITY & GUARANTY COMPANY, *Respondent*, v. CASCADE CONSTRUCTION COMPANY, *Appellant*.[1]

CORPORATIONS (151, 152) — POWERS — ULTRA VIRES — ESTOPPEL TO DENY CORPORATE POWERS. The defense of *ultra vires* not being favored in law or allowed when it defeats the ends of justice, an industrial corporation not organized for the purpose of becoming a surety, is estopped to plead *ultra vires* in indemnifying a surety company against loss as surety for contractors, where it appears that its officers represented that it was interested in the contract indemnified, and the corporation had protected itself by securing indemnity from the contractors, and allowed the obligee to proceed and pay out shortages to its detriment.

Appeal from a judgment of the superior court for King county, Smith, J., entered May 1, 1918, upon findings in favor of the plaintiff, in an action upon an indemnity bond, tried to the court. Affirmed.

*Herman Murray* and *Shorett, McLaren & Shorett*, for appellant.

*Fred M. Bond* and *McClure & McClure*, for respondent.

HOLCOMB, J.—Appellant gave respondent a contract of indemnity whereby appellant undertook to save harmless and keep respondent indemnified against all suits, actions, debts, damages, costs, charges and expenses, including court costs and counsel fees, and

[1]Reported in 180 Pac. 463.

against all loss and damage whatever that might happen or accrue to respondent by reason of respondent becoming surety upon a certain contractor's improvement bond, given by G. G. Hall and David F. Coulter, contractors for the construction of a certain highway, known as the "Mill Creek Road," to the state of Washington. Hall and Coulter requested respondent to become surety upon their bond, but McCollister, manager of respondent at Seattle, had refused to do so. Hall and Coulter then approached the president of appellant corporation, R. M. Hardy, and told him of their difficulty in procuring surety upon their bond. Mr. Hardy, in company with Lieut. Hall, one of the contractors, went to the office of respondent and interceded with McCollister for Hall and Coulter for the purpose of procuring the issuance of the bond. It was proposed by Hall and Hardy that respondent execute the bond as surety and accept an indemnity agreement to be executed by C. A. Coulter, Sally F. Coulter and J. F. Coulter, relatives of the other partner of Hall and Coulter. McCollister refused to accept such a proposal for the reason that the proposed indemnitors were inexperienced in the contracting business, and should Hall and Coulter default on the contract, it could not be completed by the indemnitors.

There is conflict in the testimony between McCollister and Hardy as to exactly what occurred during the negotiations, but the result of their conversation was that Mr. Hardy agreed for the Cascade Construction Company that, if McCollister would issue and deliver the surety bond for Hall and Coulter, the Cascade Construction Company would execute and deliver a binding indemnity agreement, and take an indemnity agreement to it from C. A. Coulter, Sally F. Coulter and J. F. Coulter. McCollister contends that

he explained to Hardy that the Cascade Construction Company, being a corporation and engaged in industrial enterprises, could not execute a binding indemnity agreement unless it had an interest in the contract in question in connection with Hall and Coulter; and that, upon this understanding, McCollister, for respondent, agreed to execute the bond for Hall and Coulter. Thereupon the same was executed and delivered, and the indemnity agreement from Coulters to appellant was shortly thereafter prepared, sent to the Coulters at South Bend, executed by them and returned to appellant. Hardy denies that there was any such statement made by McCollister that, if the Cascade Construction Company did have an interest in the contract in question, it could execute a binding contract of indemnity on behalf of that company; and states that McCollister made no such statement, and he, Hardy, made no statement that the Cascade Construction Company had any interest in the Hall and Coulter contract, and that it had, in fact, no interest in the Hall and Coulter contract whatever.

The complaint alleged that the defendant (appellant) represented to the plaintiff that it had an interest in the public improvement contract for which the plaintiff was solicited to furnish a surety bond. It was also alleged that, after entering upon the performance of the contract, Hall and Coulter were unable to complete the same, and plaintiff has been compelled to pay, and had paid, the various expenses for labor and for supplies furnished, and other items covered by the contract, in the total sum of $1,978.80, on and prior to November 5, 1917.

Appellant denied the essential allegations of the complaint and averred affirmatively that the execution of the indemnity agreement was wholly without

consideration and ultra vires. Respondent replied alleging that appellant was estopped to plead that the indemnity agreement was ultra vires because of its interest in the contract, and because of its representations that it was interested in the contract.

The trial court found that there was no proof that appellant had an interest in the contract, and this finding was conclusively established by the testimony of appellant's president and that of Lieut. Hall that it had no interest in the contract whatever. The court found, however, with respondent that appellant represented to the plaintiff that it did have an interest in the contract. This finding is based upon the foregoing testimony of McCollister and Hardy; and in such case, the trial court, having the witnesses before it, was at liberty, in the absence of other facts and circumstances preponderating against such finding, to find in behalf of either. Both of the witnesses were interested parties, and while we are asked to reverse that finding on the ground that the evidence preponderates against it, we can find no preponderating facts contrary thereto. One witness flatly contradicts the other as to the representation, and the probabilities are as much in favor of the one as the other. We must accept as established the fact, therefore, that appellant had no interest in the contract, but that it represented to respondent that it did have such interest. Upon this state of facts, the trial court concluded that the appellant was estopped to plead ultra vires as to the indemnity contract, holding it liable for the amount sued for, and entering judgment therefor.

Under the record of this case, as we must accept the facts as the trial court found them, the only question for determination is whether the court's conclusion and judgment is justified by the facts.

Appellant urges as grounds for reversal, first, that there never was any representation by it that it had an interest in the contract; that, even if such representation had been made, there can be no estoppel for the reason that respondent took the indemnity contract with the full knowledge, as testified to by its manager, that the same would be void unless the interest in the improvement contract actually existed; and, third, for the reason that appellant had not received any benefit from the contract, either from the respondent or any other.

The first and second contentions have already been determined against the appellant by what we have said before as to the facts. It remains only to discuss the third position, that the appellant received no benefit from the contract, from the respondent or from any other, and therefore cannot be estopped to assert the defense of *ultra vires*.

Appellant was organized as an industrial corporation and adopted its charter which, among other things, provided that it should have power to "make, execute, acknowledge and deliver any and all deeds, contracts, mortgages, bonds, assurances, assignments or other instruments or writings necessary, proper or convenient in carrying on the business, or exercising any and all of the powers of the corporation." It was not organized for the purpose of becoming surety or executing contracts or bonds of indemnity. While it could do so in carrying on its business of general contractors and furnishing materials therefor and the other things mentioned in its articles of incorporation, and while it could make, execute, and deliver any and all kinds of binding contracts, bonds and assurances and other instruments or writings necessary, proper and convenient in carrying on the business, or exer-

cising any of its corporate powers, it may be conceded to be technically *ultra vires* the corporation to execute any such contract, bond or assurance not incidental to the conduct of its own business. But that does not necessarily determine their nonliability in such cases as this.

"The doctrine of *ultra vires* as a defense dies hard." 2 Morse, Banks and Banking (3d ed.), 740. "But it is a defense not favored in law." *Whitney Arms Co. v. Barlow*, 63 N. Y. 62, 20 Am. Rep. 504. "It will not be allowed to prevail where it would defeat the ends of justice and work a legal wrong." *Railway Co. v. McCarthy*, 96 U. S. 258; *San Antonio v. Mehaffy*, 96 U. S. 312. "It should never be applied when it will defeat the ends of justice where such an event can be avoided." *Whitney Arms Co. v. Barlow, supra.* It is true that all our own decided cases except one have involved transactions where the defending corporation was held to have been interested or to have received or reserved some benefit from the transaction. *Tootle v. First Nat. Bank*, 6 Wash. 181, 33 Pac. 345; *Allen v. Olympia Light & Power Co.*, 13 Wash. 307, 43 Pac. 55; *Wheeler, Osgood & Co. v. Everett Land Co.*, 14 Wash. 630, 45 Pac. 316; *Spokane v. Amsterdamsch Trustees Kantoor*, 22 Wash. 172, 60 Pac. 141; *Union Sav. & Trust Co. v. Krumm*, 88 Wash. 20, 152 Pac. 681.

Appellant asserts that only in cases where the defending corporation receives 'actual benefit has this court ever refused to sustain a defense of *ultra vires;* and quotes from *Union Sav. & Trust Co. v. Krumm, supra,* as follows:

"It is clear on all authority that, had the same things been done by the express authority of its officers and directors, the appellant could not now be heard to say that the contracts, at least so far as they have been performed by the respondent, were *ultra*

*vires,* and thus defeat payment for the benefit actually received."

But we have one case where no benefit was actually received by the defending corporation, in *Creditors Claim & Adjustment Co. v. Northwest Loan & Trust Co.,* 81 Wash. 247, 142 Pac. 670, Ann. Cas. 1916D 551, L. R. A. 1917A 737. There a banking corporation guaranteed the payment of an account to a manufacturing company by one of the bank's customers, a contractor, and on being sued on the guarantee, the bank pleaded the defense of *ultra vires.* The power of the bank so to guarantee the payment of the debt of another being questioned, to reassure the creditor the bank represented that it was secured by a note. We there held that the bank, being neither prohibited nor empowered by statute to enter into such contracts, and having lulled the creditor into a position of financial security upon which the creditor relied to its injury, public policy demanded an enforcement of the contract. That case was exhaustively briefed by counsel, and the authorities ably reviewed and discussed by the late lamented Judge Morris. He there stated that public policy demanded honesty and fair-dealing on the part of a corporation, and knew of no reason why such policy should include one class of corporations and exclude another. He also pointed out in that case that:

"It may well be doubted whether any injury can come to any innocent party by denying to respondent its plea. It has fortified itself against possible loss by demanding security for its indemnity in the $2,000 note."

So here, appellant freely and voluntarily entered into the indemnity contract and allowed the respondent to proceed and pay shortages arising under the

public improvement contract to its detriment, and now seeks to repudiate its *ultra vires* contract. It had protected itself by securing an indemnity obligation from the Coulters. The respondent, not being a party to the Coulters' indemnity contract, could have no recourse to it; but appellant can, and so may probably save itself from ultimate loss. As quoted above, the defense of *ultra vires* should never be sustained where it will defeat the ends of justice where such a result can be avoided. *Whitney Arms Co. v. Barlow, supra.* To sustain the defense in this case, it seems to us, would defeat the ends of justice and should not be allowed to prevail. We would not be understood as abolishing this defense.

"The doctrine of *ultra vires* originated at a time when nearly all corporations were created for public purposes; and there is no reason why it should ever have been applied to private corporations any more than to the powers of individuals in a partnership." *Holm v. Claus Lipsius Brewing Co.,* 21 App. Div. 204, 47 N. Y. Supp. 518.

We would sustain it in any case where the transaction is prohibited, illegal, or immoral. We merely wish to be understood as following no Procrustean rule in such cases, but such defense must always be considered on the merits in law and fact.

For these reasons the judgment in this case is affirmed.

Chadwick, C. J., Parker, Fullerton, and Mount, JJ., concur.