[No. 26768. *En Banc.* February 16, 1938.]

F. A. MILLETT, *Respondent,* v. MACKIE MILL COMPANY, *Appellant.*[1]

STEINERT, C. J., HOLCOMB, GERAGHTY, and BEALS, JJ., dissent.

*L. B. Donley,* for appellant.

*Mitchell G. Kalin,* for respondent.

SIMPSON, J.—In this action the plaintiff sought to recover a judgment against defendant on an assigned claim from the Virginia Mason hospital for hospital services furnished to a third party at the request of defendant.

Plaintiff alleged that the Virginia Mason hospital had furnished hospital care and treatment for one Edward Oddson on the written agreement of defendant that it would pay such expenses.

[1]Reported in 76 P. (2d) 311.

Defendant admitted that its president had made such an agreement in writing, but that there was a limitation of its liability in the sum of sixty-five dollars, and further defendant alleged that it had no authority, under its articles of incorporation, to become a surety for or to guarantee the debts of others.

The case was tried to the court, sitting without a jury. At the close of the trial, the court found that the Virginia Mason hospital had rendered services to Edward Oddson of the value of $361.42; that the services were furnished upon the written guaranty of defendant that it would pay therefor; and that furnishing hospitalization to Edward Oddson by the Virginia Mason hospital upon the written agreement of the defendant that it would be liable, was a sufficient consideration. It also found that the defendant company was a trading or manufacturing company, that its articles of incorporation did not authorize it or its officers to guarantee the debt of another, and that such contract was *ultra vires,* but concluded that the defendant was estopped from claiming such defense because of the written guaranty given the hospital. Thereafter, judgment was entered against defendant and this appeal follows.

Appellant's assignments of error are in entering judgment for respondent in any sum to exceed sixty-five dollars and in awarding judgment in any sum against appellant.

The facts are not in dispute and are as follows: On March 9, 1932, Edward Oddson, a former employee of appellant company, sought admission to the Virginia Mason hospital at Seattle. Finding it necessary to pay in advance for such services and not having the funds, he talked to R. D. Mackie, president of appellant corporation, over the telephone and was promised financial aid. Thereafter, on March 11, 1932, in response to

a letter written by the hospital, R. D. Mackie wrote the following letter:

"Virginia Mason Hospital,                    March 11, 1932.
Seattle, Washington.

"Gentlemen:

"Confirming telephone conversation with our office in Seattle.

"We will pay the hospital expense of Edward Oddson while there under the care of Dr. Mason and staff.

"This offer does not include doctors' fees, we understand that Mr. Oddson was able to make his own arrangements for this part of the cost.

> "Yours very truly,
> "Mackie Mill Co.
> "By R. D. Mackie."

The hospital rendered services to Oddson until May 9, 1932, and charged the value thereof to defendant. At the time Oddson entered the hospital, and when the letter was written, he had nothing to do with defendant corporation as an employee or otherwise. The assignment of the account to respondent and the reasonableness of the charge by the hospital is admitted.

Appellant is a trading and manufacturing corporation engaged in the manufacture of shingles at Markham. There were no minutes made or corporation action taken authorizing the guaranty set forth in the letter. The articles of incorporation did not give appellant the right to carry on business of a surety or to act as a guarantor of the debts of others. Appellant did not receive any benefit from the transaction. There was some testimony introduced by appellant concerning the limitation of the guaranty to sixty-five dollars. This was denied by respondent's witnesses. The trial court found against the contention of appellant in this regard, and with that finding we are in agreement. If appellant is liable at all, it should be charged with

the value of the services rendered to Oddson by the hospital.

We are in agreement with the trial court's finding that the guaranty, written by appellant's president to the Virginia Mason hospital, was not authorized by appellant's articles of incorporation.

The only question to be determined is whether or not appellant was estopped from claiming the contract was *ultra vires.*

The decisions of the courts in this country concerning the right of a corporation to urge the defense of *ultra vires,* are in hopeless confusion. No two states can be said to be in agreement on this subject.

We have consistently held that the defense of *ultra vires* is not available to a corporation that has received, directly or indirectly, the benefits of the contract. *Tootle v. First Nat. Bank,* 6 Wash. 181, 33 Pac. 345; *Wheeler, Osgood & Co. v. Everett Land Co.,* 14 Wash. 630, 45 Pac. 316; *Pronger v. Old Nat. Bank,* 20 Wash. 618, 56 Pac. 391; *Spokane v. Amsterdamsch Trustees Kantoor,* 22 Wash. 172, 60 Pac. 141; *Graton & Knight Mfg. Co. v. Redelsheimer,* 28 Wash. 370, 68 Pac. 879; *Krisch v. Inter-State Fisheries Co.,* 39 Wash. 381, 81 Pac. 855; *Spencer v. Alki Point Transportation Co.,* 53 Wash. 77, 101 Pac. 509, 132 Am. St. 1058; *Creditors Claim & Adjustment Co. v. Northwest Loan & Trust Co.,* 81 Wash. 247, 142 Pac. 670, Ann. Cas. 1916D, 551, L. R. A. 1917A, 737; *Flanagan v. American Minerals Producing Co.,* 108 Wash. 569, 185 Pac. 609; *Mercy v. Hall & Son, Inc.,* 177 Wash. 338, 31 P. (2d) 1009.

In the case of *Spencer v. Alki Point Transportation Co., supra,* we held that the defendant corporation in that case could avail itself of the defense of *ultra vires* where the facts showed that it guaranteed the note of another but did not receive any of the benefits, the court saying:

"There is no evidence that the Alki company derived any power from its charter to engage to pay the debt of another, nor is there any evidence that it had theretofore entered into such engagements. It is also urged that a corporation, having received the benefit of such a contract, will not be heard to urge that it was *ultra vires.* This rule may be conceded in proper cases. It is unavailing to appellant."

There was cited with approval in that case the following:

" 'A corporation has no power to enter into a contract of suretyship or guaranty, or otherwise lend its credit to another, unless the power is expressly conferred by its charter, or unless such a contract is reasonably necessary or is usual in the conduct of its business. Ordinarily the simple act of becoming surety or guarantor for the contract or debt of another person or corporation is not within the implied powers of a corporation.' 7 Am. & Eng. Ency. Law (2d ed.), 788."

The facts in *Creditors Claim & Adjustment Co. v. Northwest Loan & Trust Co., supra,* were to the effect that the defendant bank had guaranteed for one of its customers the payment of a certain amount of electrical supplies. At the time of making the guaranty, the bank had taken an interest-bearing note from its customer, thus placing itself in a position to receive a benefit from the interest and from the customer's business with the bank. After holding the guaranteeing bank had an interest in the transaction and could not avail itself of the defense, the opinion goes on to cite much authority holding that the defense of *ultra vires* could not be available in any case except in those where the contract was illegal or immoral. This latter part of the opinion was not necessary to a decision, as we had already concluded that the bank received a benefit from the transaction.

In *United States Fidelity & Guaranty Co. v. Cascade Const. Co.,* 106 Wash. 478, 180 Pac. 463, the defendant, a contracting company, whose articles of incorporation did not authorize it to enter into contracts of guaranty, made a contract wherein it indemnified a surety company against loss on a bond given as surety for contractors who were constructing a road; and although it was found that the contracting company received no benefit, either directly or indirectly, we held the defense of *ultra vires* unavailable, basing our conclusion largely upon the authorities cited in the latter part of the opinion in *Creditors Claim & Adjustment Co. v. Northwest Loan & Trust Co., supra.*

To summarize, we find the following situation: *Spencer v. Alki Point Transportation Co., supra,* holding that the defense is available where no benefit was received, and *United States Fidelity & Guaranty Co. v. Cascade Const. Co., supra,* holding such defense unavailable in any case except those where the contract was unlawful or immoral. In each of the cases holding the defense not a proper one where the corporation received a benefit, we recognized that the holding would be otherwise if no benefit had accrued to the corporation.

Following these cases, we have that of *Mercy v. Hall & Son, Inc.,* 177 Wash. 338, 31 P. (2d) 1009, in which we held that, where a corporation guaranteed the debt of a customer, even though such action was beyond the powers of the corporation, the corporation is estopped to set up the defense of *ultra vires* if such transaction is necessary in order to procure the payment of a debt due it or to protect the corporation from a probable loss. We then distinguished that case from the *Spencer* case, saying:

"The case of *Spencer v. Alki Point Transportation Co.,* 53 Wash. 77, 101 Pac. 509, 132 Am. St. 1058, recog-

nizes the rule here stated, but does not apply it, because it could not be found from the evidence in that case that the corporation had received a benefit."

In *Mercy v. Hall & Son, Inc., supra,* we did not take into consideration the case of *United States Fidelity & Guaranty Co. v. Cascade Const. Co., supra.*

We feel that the proper rule to be applied to this case is as is found in 3 Fletcher Cyc. Corp. (1917) 2616:

"If the corporation which has entered into an ultra vires contract has received no benefits from the partial or full performance of the contract by the opposing party, it is not estopped to plead ultra vires."

To adopt a rule that would not allow the *ultra vires* defense, would endanger the investments and savings of thousands of large and small investors who either own stock or bonds of a corporation. Such a rule would leave it in the power of managers or officers of large and small corporations to destroy the business of such corporations by making improvident contracts contrary to the business for which they were incorporated.

For the reasons just given, we overrule the case of *United States Fidelity & Guaranty Co. v. Cascade Const. Co.,* 106 Wash. 478, 180 Pac. 463.

We conclude that the contract of guaranty signed by the present appellant corporation was *ultra vires,* that such defense was available to appellant, and that appellant was not responsible for such guaranty.

The judgment is reversed, with directions to dismiss.

MAIN, MILLARD, BLAKE, and ROBINSON, JJ., concur.

HOLCOMB, J. (dissenting)—The facts are correctly stated in the prevailing opinion. It cannot be questioned that the Virginia Mason hospital furnished services to Edward Oddson of the reasonable value of $278.55 upon the written promise of appellant to pay

for such services. The account was duly assigned to respondent.

This decision overrules not only the decision by this dissenter in *United States Fidelity & Guaranty Co. v. Cascade Const. Co.,* 106 Wash. 478, 180 Pac. 463, but also several others. It is also contrary to the weight of the most reputable authorities.

In *Tootle v. First Nat. Bank,* 6 Wash. 181, 33 Pac. 345, we held:

"The doctrine of *ultra vires,* when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong. *Railway Co. v. McCarthy,* 96 U. S. 258. This rule is so well established that it is the work of supererogation to quote authorities to sustain it."

To the same effect are: *Allen v. Olympia Light & Power Co.,* 13 Wash. 307, 43 Pac. 55; *Wheeler, Osgood & Co. v. Everett Land Co.,* 14 Wash. 630, 45 Pac. 316; *Creditors Claim & Adjustment Co. v. Northwest Loan & Trust Co.,* 81 Wash. 247, 142 Pac. 670, Ann. Cas. 1916D, 551, L. R. A. 1917A, 737.

Under the facts in this case, there is no question that the hospital suffered detriment relying upon the promise of appellant and cannot now be placed *in statu quo.*

In *Creditors Claim & Adjustment Co. v. Northwest Loan & Trust Co., supra,* which apparently is not over-ruled although distinguished in the prevailing opinion, we quoted with approval from the following very respectable authorities:

" 'The doctrine of *ultra vires,* when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong.' *Railway Co. v. McCarthy,* 96 U. S. 258.

" 'Although there may be a defect of power in the corporation to make a contract, yet if a contract made by it is not in violation of its charter or of any statute

prohibiting it, and the corporation has by its promise induced a party relying on the promise, and in execution of the contract, to accept money and perform his part thereof, the corporation is liable on the contract.' *State Board of Agriculture v. Citizens' St. R. Co.*, 47 Ind. 407.

" 'Where a corporation has entered into a contract which has been fully executed on the other part and nothing remains for it to do but to pay the consideration promised, it will not be allowed to set up the plea of *ultra vires.*' *Oil Creek & A. R. R. Co. v. Pennsylvania Transportation Co.*, 83 Pa. 160.

" 'Even if a contract is *ultra vires,* yet if it is not illegal the defendant is estopped from setting up that defense, as it would be a fraud upon the plaintiff to allow this to be done; he having entered into the transaction relying upon said contract.' *Bushnell v. Chautauqua County Nat. Bank,* 10 Hun 378."

All of those cases were approved in *Hutchins v. Planters' Nat. Bank,* 128 N. C. 72, 38 S. E. 252.

Executed dealings of a corporation must be allowed to stand for and against both parties when the plainest rules of good faith require it. *Parish v. Wheeler,* 22 N. Y. 494.

"The principle is so well settled in this country, that a further citation of authorities in support of it is unnecessary. Such is also the rule of the English law. . . . When a contract is not on its face necessarily beyond the scope of the power of the corporation by which it was made, it will, in the absence of proof to the contrary, be presumed to be valid. Corporations are presumed to contract within their powers. The doctrine of *ultra vires,* when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong. *Union Water Co. v. Murphy's Flat Fluming Co. et al.,* 22 Cal. 620; *Morris Railroad Co. v. Railroad Company,* 29 N. J. Eq. 542; *Whitney Arms Co. v. Barlow et al.,* 63 N. Y. 62." *Railway Co. v. McCarthy,* 96 U. S. 258, 24 L. Ed. 693.

To the same effect is *San Antonio v. Mehaffy,* 96 U. S. 312, 24 L. Ed. 816.

In the majority of jurisdictions, the rule is that an *ultra vires* transaction when executed by one of the parties may become enforceable by estoppel. 14a C. J. 323, § 2170.

Since the contract in question is neither illegal nor immoral and was freely made by appellant, good faith requires that it be enforced. To deny its enforcement is to work a legal wrong and an injustice upon respondent and the hospital.

Moreover, the overruling of the case in 106 Wash. 478, is unjustified and again unsettles the substantive law.

For these reasons, I dissent.

GERAGHTY, J., and STEINERT, C. J., concur with HOLCOMB, J.

BEALS, J. (dissenting)—While agreeing with much of what Judge Holcomb has written in his dissent, I desire to briefly state my own reasons for disagreeing with the opinion of the majority.

Mr. R. D. Mackie, president of appellant corporation, upon being solicited by Edward Oddson, through the Seattle office of Mr. Mackie's brother, agreed to pay respondent's assignor sixty-five dollars for two weeks hospitalization for Mr. Oddson. It appears that Mr. Oddson then anticipated that at the end of the two weeks period he would be discharged from the hospital. An examination of the record satisfies me that Mr. Mackie intended to limit to sixty-five dollars his promise to pay the hospital. Mr. Oddson was a former employee of appellant, and it seems to me a perfectly reasonable proposition that the Mackie Mill Company might agree to help him in his sickness up to the amount specified.

Mr. Mackie, however, in writing to the hospital, neglected to limit appellant's contract to the sum of sixty-five dollars, or to any other sum, and therefore the hospital, having been entirely ignorant of the amount for which Mr. Mackie intended to render appellant liable, was authorized to rely upon appellant's letter of March 11th, quoted in the majority opinion. This letter is not a guaranty; it does not state that appellant will pay Oddson's bill if he does not; but it is an original contract by way of a direct promise to pay. Acting upon this promise, the hospital rendered to Mr. Oddson valuable service, room, board, and nursing, of which he was desperately in need. Had the letter which Mr. Mackie wrote limited appellant's liability to the sum of sixty-five dollars, as the record clearly shows Mr. Mackie intended, I am clearly of the opinion that the contract made was not *ultra vires* the corporate powers, as disclosed by appellant's articles of incorporation, which are in the record.

These articles vest appellant with wide authority, the objects for which the corporation was formed embracing eleven paragraphs. If the money which appellant agreed to pay be considered as a loan to Mr. Oddson, instead of a gift, two of the paragraphs above referred to directly conferred authority upon appellant to lend money.

Under modern business practices, I am convinced that, under the very broad powers assumed by appellant in its articles of incorporation, it should be held that appellant had authority to loan or give to a former faithful employee (and a possible future employee) sixty-five dollars, to be used in paying for necessary hospitalization, the employee himself being entirely without means.

I am not prepared to say that the amount due respondent's assignor is so great that appellant could

not lawfully contract to pay that amount for such services as were rendered to Mr. Oddson. It is also true that, under the circumstances disclosed by the record, if Mr. Mackie, as president of appellant, has unlawfully expended or diverted corporate funds, the corporation which chose him as its president, has its remedy against him.

While I am in hearty accord with the general principles applying to the doctrine of *ultra vires,* as laid down by the majority, it seems to me clear that each individual case must be decided upon its own facts, and I am convinced that, in the case at bar, it should be held that appellant is estopped to deny its contract.

For these reasons, I dissent from the conclusions reached by the majority.