[No. 27572.   Department Two.   November 13, 1939.]

UNION FRUIT PRODUCERS, INC., *Respondent*, v. L. F.
PLUMB *et al.*, *Defendants*, FIRST NATIONAL
BANK OF OKANOGAN, *Appellant.*[1]

*Chas. A. Johnson* and *R. E. Johnson,* for appellant.

*A. N. Corbin,* for respondent.

GERAGHTY, J.—The plaintiff, Union Fruit Producers, Inc., is a nonprofit corporation, its members being apple growers in the Wenatchee and Okanogan districts. One of its activities is the sale, for processing purposes, of cull apples grown by its members.

The defendant Plumb had installed an evaporating plant and, in the early fall of 1936, sought to purchase from the plaintiff a quantity of cull apples for drying

[1]Reported in 95 P. (2d) 1033.

at his plant. Plaintiff's managing officers were doubtful of Plumb's financial worth and required that he secure financial backing. He informed them that this backing would be given in some form by the First National Bank of Okanogan. As the result of negotiations between Mr. Harry J. Kerr, president of the bank, and plaintiff's directors, the following letter was written by Kerr and delivered to plaintiff:

"Union Fruit Producers, Inc.          September 29, 1936
"Wenatchee, Washington
"Gentlemen:

"It is our understanding that your company has entered into a contract with Lawrence F. Plumb of Okanogan for the delivery of cull apples. Such apples to be processed by Plumb, and this Bank undertakes to pay for such apples as are processed by Mr. Plumb as and when processed. Payments to be made to you at Wenatchee, Washington every four days for the apples so processed on the basis of $3.50 per green ton for delicious apples and $7.00 per green ton for other varieties.                    Respectfully,
                    "HARRY J. KERR
                    "President."

On the same day, a written contract was entered into between the plaintiff and Plumb for delivery of a specified quantity of apples, of the varieties and at the prices mentioned in the letter.

In accordance with the terms of the contract, the plaintiff delivered to Plumb cull apples of the value, at the stipulated prices, of $3,778.46. At the close of the season, the bank had paid the plaintiff $2,506.74. After processing by Plumb, the dried apples were packed and stored in a warehouse. Warehouse receipts representing the pack were delivered to the bank. As enough dried fruit accumulated to make a carload, it was sold by the bank through brokers. The proceeds received by the bank from the sale of dried apples processed from green fruit delivered by the plaintiff

amounted to approximately twelve thousand dollars. The plaintiff made demand upon the bank for payment of the balance due, and, upon its refusal to pay, instituted this action for recovery against Plumb and wife and the bank.

The cause was tried to the court, sitting without a jury. The court found that there was due the plaintiff the sum of $1,271.72, and judgment was entered against the defendants for the amount. The bank has appealed. The defendants Plumb did not join in the appeal. They had appeared in the action below and admitted their indebtedness to the plaintiff in the amount found due by the court.

As stated by the appellant, the questions involved are: (1) What was the agreement between the respondent and the appellant, and (2), if the agreement was one of guaranty or suretyship, was the appellant estopped to plead the defense of *ultra vires?*

The contention of the appellant under the first head is:

" . . . that the letter of September 29th was only the beginning of oral and written negotiations between the parties, and that the final agreement, as shown by the acts of the parties, was that dried apples processed by Plumb were to be warehoused, and warehouse receipts issued to the bank, which was to advance to Plumb 75% of the sale price of the dried fruit, out of which the Bank was to remit to plaintiff for processed culls sold by it, the balance being used to repay the Bank's advances and to pay operating costs. . . . It was generally agreed that the Bank was to 'back up' Plumb and see that proceeds of dried fruit were properly applied."

The trial court concluded that the agreement embodied in the Kerr letter of September 29th, quoted above, was one of suretyship, making the appellant, as well as Plumb, primarily liable for payment of the

apples delivered to Plumb, and found as a fact that the obligation thus assumed by the appellant was not altered or modified by the subsequent dealings or correspondence of the parties.

The plan of operation followed was that Plumb would report from time to time to the appellant the amount of green fruit received from the respondent and processed by him, and the appellant would remit to the respondent the amount due in accordance with Plumb's report. As the season advanced, Plumb did not report to the appellant the full quantity of apples received, and, sometime in the latter part of October or early part of November, one Farrington, a field man looking after collections for the respondent, after an investigation into Plumb's affairs, procured from him a promissory note for $1,414, the amount then due the respondent, and also a mortgage on a quantity of unprocessed apples received from the respondent and then at Plumb's plant.

The taking of the note and mortgage by way of additional security was not inconsistent with the respondent's view of the agreement and could have made no difference to the appellant, since the apples were processed and the proceeds paid to the appellant for disbursement.

Farrington, somewhat later, prepared a letter, which was signed by Plumb and delivered to the appellant. The letter, written on the stationery of the respondent, follows:

"First National Bank,        Okanogan, Washington
"Okanogan, Wash.          November 19, 1936
"Dear Sirs:

"Please pay the UNION FRUIT PRODUCERS, INC., of Wenatchee, Wash. the balance agreed between them and myself to be due them for culls delivered to me at Okanogan, Wash. during the season of 1936 out of first money you receive from collections on sales by me of

evaporated apples for season of 1936 after first deducting 75% of the amount so collected for yourself to cover advances on said fruit and second any other advances made by yourself or others for the payment for labor in processing said fruit. It being understood that there has been advanced by Parm Dickson the sum of $200.00 which is to be paid first after deducting your 75% of the amount received.

"L. F. PLUMB."

This letter was endorsed by the appellant as follows:

"Okanogan, Washington
"November 19, 1936

"We The First National Bank of Okanogan, Wash. acknowledge the receipt of the original of the above order and agree to disburse the money received in accordance therewith. FIRST NATIONAL BANK

"By Harry J. Kerr, Pt."

The appellant urges that, whatever may have been the import of the letter of September 29th, the final agreement of the parties is expressed in the letter of November 19th.

The respondent contends that Farrington was not authorized to make any contracts binding upon it, and Farrington himself testified that he had no such authority and did not intend it to do so, but undertook to write the letter in accordance with Plumb's wishes and with the desire to help him out of his difficulties. The letter is somewhat ambiguous in its terms and might be read to mean that the appellant undertook to pay to the respondent any balance due out of the fund of seventy-five per cent of the receipts from the processed fruit. It does not appear that the letter was brought to the attention of the respondent's officers.

Other than a general finding that the contract was unmodified, the trial court did not make a finding in respect to Farrington's authority. The court did not feel it necessary to do so, because the appellant did

not account at the trial for the disposition it made of the proceeds of the dried apples, which, Plumb testified, amounted to some twelve thousand dollars. Even seventy-five per cent of this sum would be largely in excess of the amount required to pay the respondent. The burden was upon the appellant to sustain its contention that, after the payment of the expense of processing, including labor, there was not enough money left to pay the respondent. The records evidencing the disposition made of the fund were in its possession.

Plumb, testifying for appellant, was evasive in his answers. He stated that appellant advanced him money with which to pay labor and other necessary expenses involved in processing the fruit, but could not state the amounts, and failed to produce his books and records, some of which, he said, had been destroyed and some beyond his reach. The evidence does not sustain the appellant's first contention.

The evidence in the case does not sustain appellant's second contention, that the contract was *ultra vires*. The fruit was delivered to Plumb on the appellant's promise to pay for it. The appellant received all the proceeds of the fruit, amounting, as we have seen, to twelve thousand dollars. How it applied these proceeds, the evidence does not disclose in detail, other than the payments made to the respondent.

Plumb was indebted to the appellant at the time the agreement was made, and the appellant's own evidence tended to show that some of the proceeds of the fruit were to be applied in payment of advances made to him. As we have seen, the appellant did not supply any detailed statement of the application it made of the relatively large sum it received.

Undoubtedly, the appellant received direct benefits from the agreement. Our most recent statement of

the applicable rule is found in *Millett v. Mackie Mill Co.*, 193 Wash. 477, 76 P. (2d) 311, where the court said:

"We have consistently held that the defense of *ultra vires* is not available to a corporation that has received, directly or indirectly, the benefits of the contract."

In *Creditors Claim & Adjustment Co. v. Northwest Loan & Trust Co.*, 81 Wash. 247, 142 Pac. 670, Ann. Cas. 1916D, 551, L. R. A. 1917A, 737, the court sustained a contract of guaranty made by a banking corporation, saying:

"The defense of *ultra vires* is one with which the courts have had much trouble in attempting to compel some corporations to live up to their contracts, and much has been said that is hard to reconcile. Many cases, among which may be classed those from this state, have refused to recognize this defense, where the contract has been fully executed and where in its performance one party has received and retained a benefit or the other has suffered a detriment and cannot be placed in *statu quo.*"

See, also, *Castle & Co. v. Public Service Underwriters*, 198 Wash. 576, 89 P. (2d) 506.

The judgment is affirmed.

BLAKE, C. J., SIMPSON, MILLARD, and STEINERT, JJ., concur.