### Farmers and Merchants National Bank, Appellee, v. The Illinois National Bank, Appellant.

BANKS AND BANKING—*what not ultra vires national bank.* *Held,* that it was not *ultra vires* for the defendant bank in this case to promise to honor a draft upon which suit was subsequently instituted.

Assumpsit. Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the May term, 1908. Affirmed. Opinion filed November 24, 1908.

McANULTY & ALLEN, for appellant.

NORTHCOTT & ORR and ALONZO HOFF, for appellee.

MR. JUSTICE RAMSAY delivered the opinion of the court.

Appellee, a banking corporation, doing business at Tyler, Texas, brought suit in the Circuit Court of Sangamon county against the Illinois National Bank of Springfield, Illinois, to recover the amount alleged to be due from appellant to appellee by the terms of a telegram sent by the former to the latter promising to honor a draft drawn by the Woldert Grocery Co. of Tyler, Texas, upon one Puglisi of Springfield, Illinois. There was a judgment in the court below in

favor of appellee for $400.50, from which this appeal is prosecuted.

It appears from the evidence that the Woldert Grocery Co. of Tyler, Texas, sold by telegram a car of berries to one Puglisi of Springfield, Illinois, at the rate of $1.50 per crate, and in its telegram, accepting Puglisi's offer of $1.50 per crate, asked Puglisi to have his bank telegraph appellee to honor their draft drawn on account of the sale. Thereupon appellant wired appellee as follows: "Springfield, Ill., May 23rd, 1907. Farmers & Merchants Bank, Tyler, Texas. Will honor draft for Puglisi car berries dollar half per crate. Illinois Nat'l Bank." On the same day, May 23, 1907, appellee, relying upon the terms of the telegram, paid the amount of the draft, in the usual course of business, to the Woldert Grocery Company. The evidence further shows that, while a car, if loaded to its full capacity will hold 300 crates, or more, of berries, the car in question had only 257 crates of berries; that there were in the car 244 crates of strawberries and 13 crates of blackberries (besides 27 crates of vegetables not covered or included in the draft involved). Payment of the draft was not made and after protest this suit was brought and judgment had, as already stated.

Appellant contends that the draft presented to it was not the draft contemplated by the parties when the berries were sold and that the draft now involved was "dated back" to have it correspond with the date of sale, but of this there is no competent evidence. Appellant concludes that "dating back" took place from the fact that the shipper first presented for payment a draft for $415 instead of $385.50 which was presented on June 7, 1907. Such inference cannot be allowed to overcome the positive and undisputed testimony of McGhee, cashier of appellee, to the effect that on or about May 22, 1907, he passed upon the sight draft drawn by Woldert Grocery Co. on Puglisi for $385.50 and payable to appellee's order. This was

the draft drawn upon the shipment of berries here involved, and, so far as the evidence develops, was accepted by appellee and paid in the regular course upon May 23, 1907.

Counsel for appellant next contend that as the car in question was not fully loaded with berries, but only partially loaded, that the shipment did not comply with the terms of the sale and no recovery can be had on that account. The telegram, by its terms, had relation to a car of berries at $1.50 per crate, without regard to any particular number of crates, or to the capacity of the car. There was no promise made by appellant to pay a fixed or certain sum for a carload of berries, nor was there anything in any telegram as to the number of crates expected, or included in the shipment.

We think a fair construction of the language employed in the telegram to be that the promise was not to pay for a car of berries as an entirety, but to pay by the crate and that appellant is bound by the promise to pay $1.50 for each of the 257 crates shipped.

It is next urged by appellant that the contract relied upon by appellee as the basis of recovery was *ultra vires,* or without the scope of its power as a national bank; that the evidence shows that Puglisi occupied no relation, as depositor or otherwise, toward appellant and therefore it had no interest whatever in the transaction and as appellant received nothing on account of the business done, its promise to honor the draft was unenforceable. While the evidence is meager upon this subject, there is enough in the case to warrant the deduction that Puglisi was a patron or customer of appellant and was doing business through it. In the telegram of the Woldert Grocery Co. accepting Puglisi's offer of $1.50 per crate for the berries it says: "Please have your bank telegraph the Farmers and Merchants National Bank to honor our draft, etc." The inference or conclusion to be drawn from this language is that the promise to so honor the

draft would come from the bank in which Puglisi did his banking business. There is no evidence to qualify this inference and it is fairly deducible therefore that appellant, in promising to honor the draft, did so to secure business for one of its patrons, in whose business it, in turn, had an interest and from which it hoped to derive a gain.

Doubtless the extension or encouraging of Puglisi's dealings, was, from a business standpoint, the promotion of the interests of appellant and was so understood at the time. In that view of the case we think the doctrine of *ultra vires* has no application and that the holding of the court in Richelieu Hotel Co. v. Mil. Encampment Co., 140 Ill. 248, is of controlling force here.

In that case suit was brought against the Richelieu Hotel Co. to recover the amount of a subscription, agreed to be paid by said Hotel Co. (with others) to secure the holding of a proposed military encampment in or near Chicago. The hotel company insisted that the subscription was *ultra vires* and therefore uncollectable, but the Supreme Court held that the object of the subscription was not so foreign to the business of keeping a hotel as to call for the application of the doctrine of *ultra vires*. Justice Bailey said:

"Appellant doubtless subscribed upon business principles and from a business standpoint, and because they believed that by so doing they could best promote their own business enterprise."

There is no reversible error in this record, the merits of the case are with appellee, and the judgment is affirmed.

*Affirmed.*