[No. 11998½.  Department Two.  August 13, 1914.]

CREDITORS CLAIM & ADJUSTMENT COMPANY, *Appellant*, v. NORTHWEST LOAN & TRUST COMPANY, *Respondent*.[1]

BANKS AND BANKING — GUARANTY — ULTRA VIRES — ESTOPPEL. A bank is estopped to set up the defense of *ultra vires* in the making of a contract guaranteeing the payment of an account by one of its customers, a contractor, to a manufacturing company for supplies furnished, where the bank, upon receipt of a letter from the manufacturing company expressing some doubt as to the binding force of the guaranty, and requesting confirmation of a telegram previously sent notifying them that the bank guaranteed the account, wrote them that it was secured by a note for $2,000 and that its telegraphic guarantees were accepted by other banks, and that the telegram in question "is a guarantee in fact;" since the bank, though neither prohibited nor given power by statute to enter into such contracts, having lulled the company into a position of financial security upon which it relied to its injury, public policy demands an enforcement of the contract.

Appeal from a judgment of the superior court for Spokane county, Mills, J., entered January 24, 1914, upon findings in favor of the defendant, in an action on contract, tried to the court.  Reversed.

*Belden & Losey* (*Henry R. Newton*, of counsel), for appellant, contended, *inter alia*, that a corporation has, in addition to the powers expressly granted, certain implied powers incidental to and necessary to carry into effect the powers granted.  10 Cyc. 1097; 29 Am. & Eng. Ency. Law (2d ed.), 46, 47; *Flaherty v. Portland Longshoremen's Benevolent Soc.*, 99 Me. 253, 59 Atl. 58; *Sherman v. American Congregational Ass'n*, 113 Fed. 609; *Colorado Springs Co. v. American Pub. Co.*, 97 Fed. 843; *Vermont Farm Machinery Co. v. De Sota Co-operative Creamery Co.*, 145 Iowa 491, 122 N. W. 930; *Central Ohio Natural Gas & Fuel Co. v. Capital City Dairy Co.*, 60 Ohio St. 96, 53 N. E. 711, 64

[1]Reported in 142 Pac. 670.

L. R. A. 395.    That although a contract be without the powers of a corporation, it is estopped to invoke the plea of *ultra vires* when the same is executed, the corporation has received benefits thereunder, and the other party cannot be placed in *statu quo.   Denver Fire Ins. Co. v. McClelland,* 9 Colo. 11, 9 Pac. 771, 59 Am. Rep. 134; *Tootle v. First Nat. Bank,* 6 Wash. 181, 33 Pac. 345; *Spokane v. Amsterdamsch Trustees Kantoor,* 22 Wash. 172, 60 Pac. 141; *Dewey v. Toledo, A. A. & N. M. R. Co.,* 91 Mich. 351, 51 N. W. 1063; *Chapman v. Iron Clad Rheostat Co.,* 62 N. J. L. 497, 41 Atl. 690; *State Board of Agriculture v. Citizens St. R. Co.,* 47 Ind. 407, 17 Am. Rep. 702; *Osmer v. LeMay-Wegmann Brokerage Co.,* 155 Mo. App. 211, 134 S. W. 65; *McQuaig v. Gulf Naval, Stores Co.,* 56 Fla. 505, 47 South. 2, 131 Am. St. 160; *Hutchins v. Planters' Nat. Bank,* 128 N. C. 72, 38 S. E. 252; *Farmers & Merchants Nat. Bank v. Illinois Nat. Bank,* 146 Ill. App. 136; *Seeber v. Commercial Nat. Bank,* 77 Fed. 957; *First Nat. Bank of Greenville v. Greenville Oil & Cotton Co.,* 24 Tex. Civ. App. 645, 60 S. W. 828; *Timm v. Grand Rapids Brewing Co.,* 160 Mich. 371, 125 N. W. 357, 27 L. R. A. (N. S.) 186; *Wittmer Lum. Co. v. Rice,* 23 Ind. App. 586, 55 N. E. 868; *Wheeler, Osgood & Co. v. Everett Land Co.,* 14 Wash. 630, 45 Pac. 316. The public policy of a state is to be determined from the constitution, laws and judicial decisions—not from private opinions.   *Hartford Fire Ins. Co. v. Chicago, M. & St. P. R. Co.,* 70 Fed. 201, 30 L. R. A. 193; *Smith v. San Francisco & N. P. R. Co.,* 115 Cal. 584, 47 Pac. 582, 56 Am. St. 119, 35 L. R. A. 309; *Giant-Powder Co. v. Oregon Pac. R. Co.,* 42 Fed. 470.    Public policy requires that freedom to contract shall not be lightly interfered with, and contracts should not be held invalid, except in cases free from doubt. *Hartford Fire Ins. Co. v. Chicago, M. & St. Paul R. Co.,* 175 U. S. 91; *Smith v. Du Bose,* 78 Ga. 413, 3 S. E. 309, 6 Am. St. 260.    Public policy requires corporations to observe those principles of common honesty and fair dealing appli-

cable to individuals.  *Denver Fire Ins. Co. v. McClelland,* 9 Colo. 11, 9 Pac. 771, 59 Am. Rep. 134; *Seeber v. Commercial Nat. Bank,* 77 Fed. 957.

*Cordiner & Cordiner* and *A. E. Gallagher,* for respondent, contended, *inter alia,* that the defendant had no power to enter into the contract.  10 Cyc. 1109; 5 Cyc. 590; 1 Brandt, Suretyship and Guaranty (3d ed.), § 12; Cook, Corporations (6th ed.), § 774; 4 Clarke & Marshall, Private Corporations, § 134; 3 Am. & Eng. Ency. Law (2d ed.), p. 800; *Lucas v. White Line Transfer Co.,* 70 Iowa 541, 30 N. W. 771, 59 Am. Rep. 449; *Merchants' Bank of Valdosta v. Baird,* 160 Fed. 642; *National Park Bank v. German-American Mutual Warehouse & Security Co.,* 116 N. Y. 281, 22 N. E. 567, 5 L. R. A. 673; *West St. Louis Savings Bank v. Shawnee County Bank,* 95 U. S. 557; *Sturdevant Bros. & Co. v. Farmers' & Merchants' Bank of Rushville,* 69 Neb. 220, 95 N. W. 819; *Id.,* 62 Neb. 472, 87 N. W. 156; *Norton v. Derby Nat. Bank,* 61 N. H. 589, 60 Am. Rep. 334; *Wheeler v. Home Sav. & State Bank,* 188 Ill. 34, 58 S. E. 598; *National Bank of Commerce v. First Nat. Bank of Kansas City,* 61 Fed. 809.  The contract of guaranty in question is strictly an *ultra vires* contract, and not binding on defendant because beyond its power to make, and defendant is not estopped to set up defense of *ultra vires.*  *Washington Mill Co. v. Sprague Lumber Co.,* 19 Wash. 165, 52 Pac. 1067; *Spencer v. Alki Point Transportation Co.,* 53 Wash. 77, 101 Pac. 509, 132 Am. St. 1058; *Mooney v. Mooney Co.,* 71 Wash. 258, 128 Pac. 225; *Kom v. Cody Detective Agency,* 76 Wash. 540, 136 Pac. 1155; *Central Transp. Co. v. Pullman's Palace Car Co.,* 139 U. S. 24; *Stacy v. Glen Ellyn Hotel & Springs Co.,* 223 Ill. 546, 79 N. E. 133, 8 L. R. A. (N. S.) 966; *Pullman's Palace Car Co. v. Central Transp. Co.,* 171 U. S. 138; *Louisville, N. A. & C. R. Co. v. Louisville Trust Co.,* 174 U. S. 552; *Pearce v. Madison & I. R. Co.,* 21 How. 441; *Pittsburgh, C. & St. L. R. Co. v. Keokuk*

& Hamilton Bridge Co., 131 U. S. 371; *Buckeye Marble &
Freestone Co. v. Harvey,* 92 Tenn. 115, 20 S. W. 427, 36
Am. St. 71, 18 L. R. A. 252; *Dresser v. Traders' Nat. Bank,*
165 Mass. 120, 42 N. E. 567; *Day v. Spiral Spring Buggy
Co.,* 57 Mich. 146, 23 N. W. 628, 58 Am. Rep. 352; *Cali-
fornia Bank v. Kennedy,* 167 U. S. 362; *Deaton Grocery Co.
v. International Harvester Co. of America,* 47 Tex. Civ. App.
267, 105 S. W. 556; *First Nat. Bank v. American Nat. Bank,*
173 Mo. 153, 72 S. W. 1059; *McCormick v. Market Bank,*
165 U. S. 538; *Bowen v. Needles Nat. Bank,* 94 Fed. 925.
There can be no estoppel as against defendant.    11 Am. &
Eng. Ency. Law (2d ed.), 425; 11 Cyc. 738, 741; *Mooney
v. Mooney Co.,* 71 Wash. 258, 128 Pac. 225; *Franklin Nat.
Bank v. Whitehead,* 149 Ind. 560, 49 N. E. 592, 63 Am. St.
302, 39 L. R. A. 725; *Daniel v. Gold Hill Min. Co.,* 28 Wash.
411, 68 Pac. 884; *Murray v. Briggs,* 29 Wash. 245, 69
Pac. 765; *Hughes v. New York Life Ins. Co.,* 32 Wash. 1,
72 Pac. 452; *Butler v. Supreme Court of Foresters,* 53
Wash. 118, 101 Pac. 481, 26 L. R. A. (N. S.) 293; *McKeen
v. Naughton,* 88 Cal. 462, 26 Pac. 354; *Holcomb v. Boyn-
ton,* 101 Ill. 294, 37 N. E. 1031; *Clark v. Parsons,* 69 N. H.
147, 39 Atl. 898, 76 Am. St. 157; *Whitewell v. Winslow,* 134
Mass. 343; *Smith v. Sprague,* 119 Mich. 148, 77 N. W. 689,
75 Am. St. 384; *Urquhart v. Belloni,* 57 Ore. 314, 111 Pac.
692; *Brewster v. Striker,* 2 N. Y. 19; *Norton v. Coons,* 6
N. Y. 33; *Estis v. Jackson,* 111 N. C. 145, 16 S. E. 7, 32
Am. St. 784; *Cameron v. Cameron,* 95 Ala. 344; *Marsh v.
Bridgeport,* 75 Conn. 495, 54 Atl. 196; *Chafey v. Mathews,*
104 Mich. 103, 62 N. W. 141, 27 L. R. A. 558; *Tinsley v.
Fruits,* 20 Ind. App. 534, 51 N. E. 111; *Farm Land Mort-
gage & Debenture Co. v. Hopkins,* 63 Kan. 678, 66 Pac.
1015; *Brian v. Bonvillain,* 111 La. 441, 35 South. 632; *San-
born v. Van Duyne,* 90 Minn. 215, 96 N. W. 41; *Gjerstaden-
gen v. Van Duzen,* 7 N. D. 612, 76 N. W. 233, 66 Am. St.
679; *Jameson v. Rixey,* 94 Va. 342, 26 S. E. 861, 64 Am.
St. 726; *Murphy v. Clayton,* 113 Cal. 153, 45 Pac. 267;

*Ware v. Chew,* 43 N. J. Eq. 493, 11 Atl. 746; *State v. Mellette,* 16 S. D. 297, 92 N. W. 395; *Centennial Eureka Min. Co. v. Juab County,* 22 Utah 395, 62 Pac. 1024.

MORRIS, J.—In May, 1909, A. C. Rice, having obtained the contract for installing the electrical fixtures in the Federal building at Spokane, wrote to the Crown Electrical Manufacturing Company, at St. Charles, Illinois, requesting prices on certain fixtures. The Crown Electrical Manufacturing Company, replying to this letter, quoted prices to Mr. Rice, and on June 16, Rice wrote a letter to the Crown Electrical Manufacturing Company, accepting its offer, and a second letter inquiring as to the credit conditions, saying that he would make arrangements to have the account guaranteed by a local bank. This course being satisfactory to the Crown Electrical Manufacturing Company, Rice obtained a guarantee from the respondent, and wired the Crown Electrical Manufacturing Company to that effect, the respondent upon the same day wiring the Crown Electrical Manufacturing Company as follows:

"Spokane, Wash., 7-3-09.
"Crown Elec. Mfg. Co. We guarantee A. C. Rice bill two thousand dollars for Spokane Post-Office Elec. equipments.
"Northwestern Loan & Trust Co."

Upon receipt of this telegram, the Crown Electrical Manufacturing Company wrote a letter to the respondent, part of which is as follows:

"We have your telegram stating you will guarantee A. C. Rice bill for two thousand dollars for the Spokane Post Office equipment. We would like you to confirm this, and also state that you are in a position where you can guarantee this so that it will be binding, as our understanding is that an ordinary bank guarantee is not good under the law, and of course, we wish this to be what it represents, a guarantee in fact. We have had trouble in Washington with the Oregon Trust & Savings Bank, under the same kind of a guarantee, in which the receiver has refused to pay when they

went into bankruptcy, and which we are now suing and consequently do not wish to get tied up in another deal of the same kind."

In response to this letter, the respondent wrote to the Crown Electrical Manufacturing Company partly as follows:

"Replying to your letter of July 6th, we beg leave to say that we do now confirm our telegram, and inasmuch as we have taken their note secured to cover any payments we might make up to $2,000, we surely are in a position to guarantee the matter. Our ordinary telegraphic guarantee in the usual order of business is accepted by our New York correspondents and other banks, and we think your statement that an ordinary bank guarantee is not good under the law is perhaps too full a statement on your part. The wire or telegram that we sent you is a guarantee in fact."

About the same time, Rice wrote a letter to the Crown Electrical Manufacturing Company, part of which is as follows:

"In regards to bank guarantee will say that bank guaranteeing payment to you is controlled by the Gallands, who are wealthy brewers and property owners of this city. If you take time to look up Dun's reports you can readily satisfy yourself on this score. The bank here are themselves protected by a note of two thousand dollars, signed by N. E. Rice and F. E. Empey and myself. Mr. Empey, my brother-in-law, and N. E. Rice, my father, are worth in the neighborhood of $100,000. So the bank is amply protected."

On July 2, F. E. Empey, N. E. Rice, and A. C. Rice executed and delivered to the respondent a note in the ordinary form for the sum of $2,000. This is the note referred to in the letters of Rice and respondent, and the record shows that, as stated in the letters, it was given for the purpose of protecting the respondent against any loss that might come to it by reason of this guaranty. The account not having been paid, it passed into the hands of the appellant through due assignment, and this action was brought to recover the amount due, after the institution of suit against Rice and

the obtaining of a judgment against him for $1,724.10, and the return of execution unsatisfied. The court below dismissed this action, holding that the act of respondent in entering into the contract of guaranty was *ultra vires*.

The defense of *ultra vires* is one with which the courts have had much trouble in attempting to compel some corporations to live up to their contracts, and much has been said that is hard to reconcile. Many cases, among which may be classed those from this state, have refused to recognize this defense, where the contract has been fully executed and where in its performance one party has received and retained a benefit or the other has suffered a detriment and cannot be placed *in statu quo*. *Tootle v. First Nat. Bank*, 6 Wash. 181, 33 Pac. 345; *Allen v. Olympia Light & Power Co.*, 13 Wash. 307, 43 Pac. 55; *Wheeler, Osgood & Co. v. Everett Land Co.*, 14 Wash. 630, 45 Pac. 316; *Spokane v. Amsterdamsch Trustees Kantoor*, 22 Wash. 172, 60 Pac. 141.

In the last case, *Thomas v. Railroad Co.*, 101 U. S. 71, and *Parish v. Wheeler*, 22 N. Y. 494, were cited to the effect that executed dealings of corporations must be allowed to stand for and against both parties when the plainest rules of good faith require it. The statutes of this state, under which the respondent was organized and from which it derives its powers, give us no aid in determining the power of this corporation to enter into contracts of this character. They contain neither a grant of such power nor a prohibition against its exercise. At the time of the transaction here involved, Rice was a customer of respondent bank, and had been since the preceding October. Such fact was held, in *Farmers' & Merchants' Nat. Bank v. Illinois Nat. Bank*, 146 Ill. App. 136, to sustain a liability against the bank upon the ground that, in promising to honor the draft which was there sought to be enforced against it, the bank did so to secure business for one of its customers, in whose business it in turn had an interest and from which it hoped to derive

gain; and that, in extending and encouraging its customers' business, the bank, from a business standpoint, was promoting its own interest, and for that reason could not plead *ultra vires* as a defense. This holding is in line with those cases like *Tootle v. First Nat. Bank, supra,* which take the position that the receiving and retention of a benefit or the suffering of a detriment is sufficient to take away the defense of *ultra vires.*

Morse on Banks and Banking, § 740 (4), states as the rule that, where the excess of power is not a violation of the statute but of the common law, a bank will be liable on its *ultra vires* contract,

". . . provided that either of the following combinations of facts exist: first, that the bank has received benefit from the transaction which it cannot or does not restore, . . . or, second, that the opposing party against whom the plea of *ultra vires* is hurled can show *both* that he had no notice actual or constructive that the contract was *ultra vires,* . . . *and* that he is a holder for value, or has parted with value or changed his condition disadvantageously by reason of the transaction."

In *Hagerstown Bank v. London Savings Fund Society,* 3 Grant's Cases (Pa.) 135, the supreme court of Pennsylvania held that, though the act of the bank was unauthorized and beyond its power, as between the bank and those who contracted with it, the unauthorized act would become a part of the usual and appropriate business of the bank, and it could not avoid liability. The following cases hold that, while generally a bank has no power to make a guaranty, it may do so for the protection of its own rights or as an incident to the transaction of its own business: *Ayer v. Hughes,* 87 S. C. 382, 69 S. E. 657; *Talman v. Rochester City Bank,* 18 Barb. (N. Y.) 123; *People's Bank v. National Bank,* 101 U. S. 181; *Commercial Nat. Bank v. Pirie,* 82 Fed. 799; *Thomas v. City Nat. Bank of Hastings,* 40 Neb. 501, 58 N. W. 943, 24 L. R. A. 263; Mitchie, Banks and Banking, 681. The last authority, at page 682, also lays

down the rule that a bank may be estopped to deny its liability on a guaranty notwithstanding the contract was *ultra vires*, when the other party relied and acted thereon to his injury.

In *Hutchins v. Planters' Nat. Bank*, 129 N. C. 72, 38 S. E. 252, it was held, in ruling upon a demurrer to the complaint, that liability could be enforced against the bank upon its guaranty of a draft, basing such holding upon the following citations:

"The doctrine of *ultra vires*, when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong." *Railway Co. v. McCarthy*, 96 U. S. 258.

"Although there may be a defect of power in the corporation to make a contract, yet if a contract made by it is not in violation of its charter or of any statute prohibiting it, and the corporation has by its promise induced a party relying on the promise, and in execution of the contract, to accept money and perform his part thereof, the corporation is liable on the contract." *State Board of Agriculture v. Citizens' St. R. Co.*, 47 Ind. 407.

"Where a corporation has entered into a contract which has been fully executed on the other part and nothing remains for it to do but to pay the consideration promised, it will not be allowed to set up the plea of *ultra vires*." *Oil Creek & A. R. R. Co. v. Pennsylvania Transportation Co.*, 83 Pa. 160.

"Even if a contract is *ultra vires*, yet if it is not illegal the defendant is estopped from setting up that defense, as it would be a fraud upon the plaintiff to allow this to be done; he having entered into the transaction relying upon said contract." *Bushnell v. Chautauqua County Nat. Bank*, 10 Hun 378.

See, also, *Whitney Arms Co. v. Barlow*, 63 N. Y. 62, 20 Am. Rep. 504. Applying these principles to the facts of that case, the court added:

"It does not lie in the defendant's mouth to say that it had no authority to do what it did, after the plaintiff has shipped

his hides, relying upon the defendant's promise that the draft should be paid."

The lower court was seemingly of the opinion that the application of these principles would defeat the defense of *ultra vires* in case an ordinary commercial or industrial corporation should seek its protection, but that public policy demands a different rule when applied to a banking corporation. So far as public policy demands honesty and fair dealing on the part of corporations, we know of no reason why such a policy should include one class of corporations and exclude the other. Upon this line, respondent strongly pleads for protection to respondent's stockholders. It may well be doubted whether any injury can come to any innocent party by denying to respondent its plea. It has fortified itself against possible loss by demanding security for its indemnity in the $2,000 note. It may safely be assumed that, before accepting this note, the bank well knew that it was a good note, collectible on condition broken, so that in fulfilling its contract the bank would work no hardship upon its stockholders or deprive them of assets in which they had the right to share. The respondent not only freely entered into this relation with the Crown Electrical Manufacturing Company, but, after the electrical company had indicated its misgivings as to the binding force of the guaranty and called attention to its understanding of the law and its resort to legal proceedings to enforce like contracts, respondent, seeking to allay this suspicion and to establish full reliance upon its good faith, wrote the letter of July 16, referring to the fact that it has secured itself with the $2,000 note and that its guaranties are accepted by other banks and are to be received as "a guarantee in fact." Having lulled the electrical company into a position of financial security by referring to its protection against loss and affirming that its guaranty was without blemish of either law or fact, common honesty demands an enforcement of the contract. We have no hesitancy in holding that, upon the facts of this case, the defense

of *ultra vires* is not available to the respondent. To hold otherwise, in the light of this record, would be to encourage fraud and bad faith, and to put the law in the position of awarding a premium to dishonesty.

The judgment is reversed.

Crow, C. J., Fullerton, Parker, and Mount, JJ., concur.