### BANK OF PROCTORVILLE v. DR. G. H. WEST.

(Filed 25 October, 1922.)

1. **Banks and Banking—Cashier—Principal and Agent—Deposits—Overdrafts.**

    Where a cashier of a bank, in his individual capacity, and for his own private use, purchases an automobile and promises to deposit the purchase price to the seller's credit at the bank, to meet his draft therefor; but the cashier fails to make the deposit and carries the amount on the books of the bank as an overdraft of the seller, and this is done *without* the knowledge of the directors or other proper officers of the bank: *Held,* the seller is responsible, on the failure of the cashier to make the deposit as promised, for the amount of his overdraft in an action by the bank.

2. **Same—Want of Authority—Knowledge Imputed.**

    Knowledge of a transaction by a cashier of a bank made with a depositor for the cashier's sole benefit against the interest of the bank will not be imputed to the bank, and the bank will not be bound thereby in the absence of actual knowledge.

3. **Banks and Banking—Overdrafts—Notice—Knowledge of Depositors— Notice Imputed—Principal and Agent—Antagonistic Interests.**

    A cashier of a bank cannot bind the bank by permitting a depositor to overdraw his account for the sole personal interest of the cashier, for the agent's interest is antagonistic to that of his principal. The depositor is affected with knowledge of the status of his own account with the bank and the fact that the bank fails to notify him of the overdraft cannot defeat the latter's recovery upon the overdraft, even if there is no fraud.

APPEAL by plaintiff from *Connor, J.,* at April Term, 1922, of ROBESON.

BANK v. WEST.

*E. J. Britt* and *McIntyre, Lawrence & Proctor* for plaintiff.
*McLean, Varser, McLean & Stacy* and *S. Brown Shepherd* for defendant.

CLARK, C. J.   A jury trial was waived, and this case was submitted on facts agreed:  On 28 May, 1920, N. C. Blue, cashier of the plaintiff bank, in his private capacity as an individual, and for his individual uses and purposes, purchased an automobile from the defendant at the price of $540.   Blue instructed West, who was a customer of the bank, to draw a check upon the bank for the purchase price, and promised that when it was presented he, Blue, would deposit sufficient funds to the credit of the seller in the said bank to make the draft good.   Pursuant to this agreement, West drew his check upon the plaintiff bank, which was duly charged to his account, but Blue failed to place funds to the credit of West to meet the same when presented and paid, but simply charged up the amount on West's account, creating an overdraft for the whole amount.

This action is brought by the bank to recover said overdraft of $540. None of the officers or directors of plaintiff bank had any knowledge whatever of any of the transactions.   In October, 1920, about four months after the above transaction, on an examination of the bank by the officers of the State Banking Department, it was discovered that cashier Blue was a defaulter for a large amount, and he was removed. No notice was given to West of the overdraft until after the removal of Blue as cashier, because the other officers and directors of the bank had no knowledge of the overdraft.   Upon ascertaining the fact, a demand was made upon the defendant for payment of the overdraft, and refused, and this action was brought.   Blue was insolvent when he purchased the automobile, and is still insolvent.   He was the only salaried officer connected with the bank.

Independent of the purchase of the automobile, and the other circumstances mentioned, the defendant is liable to the bank for payment of the overdraft by him.   The fact that the cashier had promised to put a sum there to meet it, which was not done, does not affect the fact that the defendant has gotten $540 in money from the bank by the overdraft, and his liability therefor.   If the promise had been carried out by the cashier actually putting the money of the bank to the credit of West, the cashier would have been guilty of embezzlement in applying $540 of the money entrusted to his care and custody and converting it to his own use, an offense for which the doors of the penitentiary would have swung open.   As he failed to so place the money, either his own or of the bank, it was simply a case where the cashier promised, as any other person could have promised, to place a sum to the credit of the drawer of the

check and did not do so. The liability of the drawer to the bank is due to the fact that he has gotten $540 of the bank's money by means of an overdraft, for which the drawer is responsible to the bank, and it was his misfortune that he accepted the assurance of Blue that he would place that much money to his credit.

West knew, as a matter of course, that the transaction in effect was that the cashier, without any authority from the bank, was to loan him $540 without any note or security given by him to the bank, and without payment of interest. He knew that the cashier had no authority to make such transaction, and he sold the automobile to him for the sake of the profit in such sale, relying upon the promise of Blue to place money in the bank to the defendant's credit, which promise the cashier did not keep. The failure to do so was the loss of the defendant, and not the loss of the bank, for the cashier had no authority to use the bank's funds for his own purposes. Even if, as cashier, he had actually paid the check of the bank in the utmost good faith, it was none the less an overdraft, for which West was indebted to the bank. The cashier's promise to West to make it good in no wise released West from payment of the overdraft when the cashier failed to place the money to the credit of the drawer. This case is almost identical with that of *Grady v. Bank, ante,* 158.

In *Dowd v. Stephenson,* 105 N. C., 467, the Court held that when the president of a bank authorized a transaction to pay debts due by himself, though with the knowledge of the cashier of the bank, it was no defense, the Court saying that the president and officers of the bank other than the directors, have no authority to appropriate its moneys. As said in that case; "The defendant got the benefit of the bank's money in a way not authorized or intended by it, and very certainly it can recover that money by proper action," citing Moss on Banking, sec. 360, and cases.

The agreement between the cashier, Blue, and the defendant West was a fraud upon the plaintiff bank, and it can recover the amount of an overdraft created as the result of such fraudulent agreement.

In *Hier v. Miller,* 68 Kansas, 258; *S. c.,* 63 L. R. A., 952, it was held: "The cashier of a bank has no implied authority to pay his individual debts by entering the amount of them as a credit upon the pass-book of his creditor, who keeps an account with the bank, and permitting the creditor to exhaust such account by checks which are paid, the bank having received nothing of value in the transaction. If the cashier of a bank, without actual authority to do so, should undertake to pay his individual debts in the manner stated, the bank may recover of his creditor the amount of money it paid out upon the faith of the unauthorized pass-book entries. The fact that the cashier is personally in-

terested in a transaction of this character is sufficient to put the creditor upon inquiry as to the actual extent of the cashier's powers." In *Cobe v. Hardware Co.,* 31 L. R. A. (N. S.), 1126, it was said: "Devlin and the cashier, acting in connivance with him, could no more appropriate the funds of the bank to pay the individual debts of Devlin without the sanction of the board of directors than could the cashier of the bank in the cited case, and it was incumbent upon the appellee, as it was upon the creditor in that case, to inquire whether the officers of the bank were acting within the scope of their authority."

In *Bank v. Wilson,* 124 N. C., 568, it was said: "The alleged agreement was beyond the scope of the agency of the cashier, and without consideration, and therefore void. . . . A cashier cannot, without express authority, take in payment of a note a mere verbal assignment of an intangible interest in another note already held by another bank as collateral."

The decision in *Dowd v. Stephenson, supra,* is fully sustained by the following authorities: Notes to 1 A. L. R., 699; notes to 31 L. R. A. (N. S.), 1126, *supra; Bank v. Gunhus,* 9 L. R. A. (N. S.), 471; *Bank v. Otterbach,* 131 Iowa, 160; *Langlois v. Gragnon,* 123 Louisiana, 453; *Campbell v. Bank,* 67 N. J. L., 301; *Bank v. Drake,* 29 Kansas, 311; *Bank v. Bank,* 95 U. S., 557; *Bank v. Lennon,* 170 N. C., 10.

The agreement was a fraud upon the plaintiff bank, and the knowledge of Blue, the conniving cashier, will not be imputed to the bank. *Roper v. Ins. Co.,* 161 N. C., 157, where it is said: "The rule that notice to an agent is notice to the principal being based upon the presumption that the agent will transmit his knowledge to his principal, the rule fails when the circumstances are such as to raise a clear presumption that the agent will not perform this duty, and, accordingly, where the agent is engaged in the transaction in which he is interested adversely to his principal, or is engaged in a scheme to defraud the latter, the principal is not charged with the knowledge of the agent acquired therein. . . . This principle of imputed knowledge does not apply when it would be against the interest of the agent to make the disclosure." To the same purport, *Commission v. Bank,* 164 N. C., 358; *Brite v. Penny,* 157 N. C., 110; *Bank v. School Committee,* 118 N. C., 383; *Bank v. Burgwyn,* 110 N. C., 267.

The fact that no notice was given to the defendant West of the existence of the overdraft until some time after the draft was cashed does not prevent the plaintiff from recovery. It would not have this effect even in cases where there was no fraud, for the liability to the bank for the overdraft arises upon the obligation to pay money had and received, but in this case it is admitted in the facts agreed that none of the officers or directors of the plaintiff bank, except the guilty cashier, had any

knowledge or notice of the transactions between the cashier and the defendant West until some four months after the draft was cashed, and that immediately upon discovery of the facts, notice was given to the defendant and demand for payment made. Even when there is the utmost good faith, there is no authority nor principle which sustains the proposition that unless the bank promptly notifies a depositor of the existence of an overdraft that it cannot recover the amount thereof from the customer. The customer is fixed with knowledge of the condition of his account as fully as the bank, and has the same knowledge that he has overdrawn his account.

As was said by us at this term, upon a similar statement of facts, in *Grady v. Bank, ante,* 158, citing *Hier v. Miller,* 63 L. R. A., 952, *supra,* the mere fact that the cashier was personally interested in the transaction was sufficient to put the creditor upon inquiry.

Upon the facts agreed, judgment should have been entered in favor of the plaintiff.

Reversed.