When this action was called for trial and before any evidence was offered, defendants, J. E. Williams and P. S. Cooper, demurred, ore tenus, on the ground that no cause of action was stated in the complaint as to them, or either of them. Demurrer was sustained, and plaintiff excepted.
At the close of all the evidence, defendant, Angier Bank and Trust Company, renewed its motion, first made at the close of plaintiff's evidence, and then denied, for judgment as of nonsuit. This motion was allowed. Plaintiff excepted. From judgment in accordance with motion, plaintiff appealed.
In its complaint, plaintiff alleges that P. S. Cooper and J. E. Williams were President and Vice-President and Cashier, respectively, of defendant, Angier Bank and Trust Company, a corporation, engaged in the general banking business in the town of Angier, N.C.; that on 24 October, 1921, said corporation was planning and about to undertake the erection of a new building in Angier to be used partly as a bank; that P. S. Cooper, President, and J. E. Williams, Vice-President and Cashier, as officers of said corporation, were in complete charge and control of its business, and were acting for the corporation in the matter of erecting said building. It further alleges that defendants had employed M. O. Cole as "its cut stone contractor for the said building" and that said Cole had made out the specifications for the cut stone required for the said building; that defendants "sent in said order to the plaintiff, and authorized and instructed this plaintiff to ship to the defendants the amount of cut stone specified in said order, and signed a written guarantee by and for defendant bank, guaranteeing unto the plaintiff to make payment for all stone required for the bank building at Angier, N.C. according to the order placed by M. O. Cole." Plaintiff then alleges the shipment of said stone, and failure of defendants to pay for same, on demand of plaintiff.
There are no allegations in this complaint, upon which either P. S. Cooper or J. E. Williams can be held liable to plaintiff for the stone shipped by plaintiff. It is alleged specifically that they were acting as *Page 279 
officers of defendant, Angier Bank and Trust Co., a corporation. There was no error in sustaining the demurrer.
The evidence offered at the trial, to sustain plaintiff's action against Angier Bank and Trust Co., tends to show the following facts:
A short time prior to 24 October, 1921, plaintiff, whose place of business is in Chicago, Ill., received from M. O. Cole, of Durham, N.C. a written order for cut stone to be shipped to Angier, N.C.; before accepting said order, plaintiff sent the manager of its eastern sales office to Angier, N.C. where he saw J. E. Williams; said Williams was in charge of defendant bank as cashier. He stated to plaintiff's manager that "the bank was to have a new building"; relying upon this statement, plaintiff's manager asked Mr. Williams as cashier, to guarantee payment by Cole of the stone which Cole had ordered from plaintiff.
Thereupon, Mr. Williams signed and delivered to plaintiff's manager a letter as follows:
W. H. GREGORY, Vice-Pres. J. E. WILLIAMS, Vice-Pres. and Cashier.
"ANGIER BANK AND TRUST COMPANY,
ANGIER, NORTH CAROLINA.
P. S. COOPER, PRESIDENT,
Dunn, N.C.
OCTOBER 24, 1921.
The Indiana Quarries Company, Chicago, Ill.
Gentlemen:
This is to certify that we will guarantee payment for all stone required for our bank at Angier, N.C. per order placed by Mr. M. O. Cole, who is our cut stone contractor on this operation. The terms are sixty days from date of invoice. Yours truly,
J. E. WILLIAMS, Cashier."
Upon receipt of this letter plaintiff accepted Cole's order and shipped the stone ordered by him to Angier, N.C.; invoices were mailed to Cole dated 5 and 19 November, 1921, respectively; the total amount of these invoices was $1,238.98; no payment has been made on the account for this stone by any one, and same is now past due.
At the time the letter was signed and delivered by J. E. Williams to the manager of plaintiff, the Williams Supply Company, a corporation, was engaged in the erection of a building in Angier, N.C.; this building was planned partly as a bank; J. E. Williams, cashier, of *Page 280 
Angier Bank and Trust Company, was secretary of the Williams Supply Company; all the stock in said company was owned by P. S. Cooper, J. E. Williams and Mrs. J. E. Williams; the stone shipped by plaintiff, upon Cole's order, was ordered for and was used in the construction of this building; Angier Bank and Trust Company had no interest in said building or in its erection; its board of directors had not authorized J. E. Williams, cashier, to write the letter purporting to be a guarantee by the bank of payment for the stone shipped by plaintiff; it did not contemplate at the time the erection of a bank building.
Plaintiff relied upon the letter offered in evidence in good faith as the guarantee by defendant of its account against Cole for the stone; it had no notice that defendant had no interest in said building, or that Williams, its cashier, had a personal interest in the shipment of the stone.
At the close of all the evidence, the motion of defendant, Angier Bank and Trust Company, for judgment as of nonsuit was allowed. Plaintiff excepted, and assigns this as error.
If there had been evidence, from which the jury could find that plaintiff had notice, at the time it shipped the stone to Cole, at Angier, N.C. that defendant, Angier Bank and Trust Company, had no interest in the building in which the stone was to be used, and that J. E. Williams, its cashier, had a personal interest in the purchase of the stone, Grady v.Bank, 184 N.C. 158; Bank v. West, 184 N.C. 220, and Stansell v. Payne,189 N.C. 647, would be conclusive of this appeal. If plaintiff had had notice of these facts before it shipped the stone, clearly the defendant, Angier Bank and Trust Company, could not be held liable upon the letter written and signed by the cashier, and purporting to be its guarantee of payment of the stone. The authority of a cashier is confined to transactions which are for the benefit of the bank. It does not extend to a transaction which is for the benefit of the cashier personally, and one dealing with him with notice that such is the character of the transaction can acquire no rights thereby against the bank, unless the transaction was actually authorized, expressly or by implication. Tiffany on Banks and Banking, p. 325.
In Grady v. Bank, supra, Chief Justice Clark, writing the opinion for the Court, says: "Upon all the evidence, and in the light of the above cited authorities, Grady was not an innocent party to the transaction." Grady knew that the cashier had a personal interest in the note which he alleged the cashier had taken in part payment of his note held by the bank. Although the cashier had authority to receive payments on notes held by the bank, he had no authority, as cashier, to take a note, which was virtually his own note, held by Grady for *Page 281 
a loan made to a corporation of which the cashier was an officer, and on which he was an endorser, in payment of Grady's note to the bank.
In Bank v. West, supra, the cashier of plaintiff bank had bought an automobile of defendant, who was a customer of the bank. Pursuant to the cashier's instruction, defendant drew his check on the bank for the purchase price of the automobile. This check was paid by the cashier, who, however, failed to deposit to the credit of defendant money for the payment of the check as he had agreed with West to do. The result of the transaction was an overdraft on the bank by defendant, who thereby procured the money of the bank in payment of the cashier's personal debt. It was held that the bank was entitled to recover of defendant the amount of the overdraft. It is said in the opinion that "West knew, as a matter of course, that the transaction in effect was that the cashier, without any authority from the bank, was to loan him $540 without any note or security given by him to the bank, and without payment of interest."
In Stansell v. Payne, supra, the plaintiff had notice that the president, who endorsed the note in the name of the bank, was acting not in the interest of the bank, but in his own interest. The president had no express authority to endorse the note in the name of the bank; we held that authority could not be implied from the mere fact that he was president of the bank.
It has been held, however, that the principle upon which these cases were decided does not apply where the party relying upon the act of the cashier had no notice of his personal interest or of the lack of interest of the bank in the transaction; nor does it apply where the act of the cashier is within his authority, expressly conferred by the bank, or where the act is ratified by the bank by receipt of benefits arising therefrom.
In Williams v. Bank, 188 N.C. 197, the bank was held liable for a transaction made in its name by the cashier, who applied the proceeds of the plaintiff's note to his own use, for the transaction was within the authority of the cashier, and the wrongful application was made without the knowledge of plaintiff. In Trust Co. v. Trust Co., 188 N.C. 766, we held that the guaranty of a note of a customer by the cashier of the bank was binding on the bank, the cashier having no personal interest in the transaction, and the bank having received credit, with the bank relying upon the guarantee for the note thus guaranteed. In that case, the cashier had authority to discount notes owned by the bank, and the transaction was only one of many similar transactions which had been previously had between the parties, all of which had been recognized by the bank as valid and binding. *Page 282 
If a cashier, purporting to act for his bank, makes a contract, which he has authority to make, or which by reason of special circumstances is within the apparent scope of his authority as cashier, the bank is bound, and must be held liable. The fact that the bank receives no benefit from the contract or transaction, and that the cashier has a personal interest therein, does not relieve the bank from liability, unless the other party had notice of these facts. This principle, however, does not apply where the cashier has no authority, express or implied, to make the contract for the bank, or where the contract or transaction is not within the apparent scope of his authority. One who relies upon a contract, or transaction, made by a cashier, purporting to act therein for his bank, which is not within the apparent scope of his authority, or within his implied authority, as cashier, acts at his peril, for the bank will not be held liable unless express authority from the bank is both alleged and proved. The rigid enforcement of this well-settled principle is required for the protection, not only of stockholders, but also of depositors and the public.
There is no evidence on this record that plaintiff had notice that the defendant had no interest in the building for which the stone was ordered, or that the cashier had a personal interest therein, which would prevent liability attaching to the bank on account of the transaction, made in its name by the cashier. There is, further, no evidence that the cashier had express authority from the bank to guarantee the account of plaintiff against Cole for stone ordered by him and shipped by plaintiff. There is evidence, on the contrary, that he had no such authority. Nor is there any evidence tending to show any facts from which the jury might find that the contract or transaction was within the apparent scope of Williams' authority as cashier. There had been no prior dealings between plaintiff and defendant, and no evidence of contracts or transactions by the cashier with other parties similar to this transaction, which had been ratified by the bank.
The question presented by this appeal, therefore, is whether the cashier of defendant bank had any implied authority to bind the bank by a guarantee of plaintiff's account against Cole for the stone.
It must be noted that the cashier, in this case, did not purchase stone of plaintiff for defendant, to be used in a building to be erected by defendant for the convenient transaction of its business. The defendant, as a corporation, engaged in the banking business, under the laws of this State, has the power to purchase and hold such real estate as shall be necessary for the convenient transaction of its business. Public Laws 1921, chap. 4, sec. 26. Whether a cashier has implied authority to purchase material for a building to be erected by his bank, is not presented in this case. The debt for the stone was Cole's debt, *Page 283 
not the debt of the bank. He was primarily liable. Plaintiff contends that the bank is liable only as a guarantor of Cole's debt.
Defendant, as a banking corporation, under the laws of this State, in addition to the powers conferred by law upon private corporations, has power "by its board of directors, or duly authorized officers and agents, subject to law, to exercise all such powers as shall be necessary to carry on the business of banking, by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of indebtedness, by receiving deposits, by buying and selling exchange, coin and bullion, by loaning money on personal security or real and personal property." C. S., 220 (a); Public Laws 1921, chap. 4. The words used in the statute relative to the powers of corporations engaged in the banking business under the laws of this State are almost identical with those used in the Federal statute, relative to the powers of National Banks. U.S. Comp. Stat. 1918, sec. 9661, subsec. 7.
"In the absence of an express grant of authority, a banking corporation, as a rule, has not the power to become the guarantor or surety of the obligation of another person, or to lend its credit to any person. No such power being conferred by the National Bank Act, this rule applies to National Banks." Tiffany on Banks and Banking, p. 284. "Banking associations from the very nature of their business are prohibited from lending credit." Magee on Banks and Banking, p. 466: "It is not within the ordinary functions of a bank to lend its credit, and so it cannot become an accommodation endorser. Neither is a bank authorized to become a guarantor, except where it is necessary to protect its rights where the guaranty relates to commercial paper and is an incident to the purchase and sale thereof, or when the guaranty is especially authorized by law." 7 C. J., 595. "A banking corporation cannot lend its credit to another by becoming surety, endorser or guarantor for him." 3 R. C. L., 425. Each of these statements as to the law is sustained by numerous citations of authority.
An exception has been made to the general proposition herein approved, where the bank enters into a guaranty for its own advantage as an incident to business in which it is authorized to engage (Tiffany on Banks and Banking, p. 285, and authorities cited), or where the bank has actually received benefit from one who has relied, in good faith, upon the guaranty.Creditors Claim Co. v. Northwest L. T. Co., 81 Wn. 247, 142 P. 670. This exception will not avail the plaintiff in the instant case, for, while the transaction on its face purports to be for the advantage of defendant as an incident to the erection of a building for bank purposes, the making of a guaranty, even if same is within the power of the bank, cannot be held to be within the implied powers of a cashier. If upon the facts appearing from *Page 284 
the evidence in this case, the defendant, by its board of directors, whose powers are larger than those of a cashier (Public Laws 1921, ch. 4, sec. 48), had authority to guarantee payment for stone shipped to Cole, it does not follow that the cashier, without express authority from the board of directors, was authorized to bind the corporation by a guarantee. Clearly a cashier has no implied power to make a contract binding on the bank which the bank itself has power to make only under special circumstances.
The judgment of nonsuit is sustained. Defendant is not liable to plaintiff as a guarantor of the payment for stone shipped upon the order of Cole, for the reason that J. E. Williams, cashier, was without authority, express or implied, to bind defendant as he undertook to do in his letter dated 24 October, 1921. Lack of liability is not determined by the fact that defendant had no interest in the building for which the stone was ordered, or that the cashier had a personal interest in the building in which the stone was used. Even if the facts had been otherwise, defendant could not be held liable upon the guaranty of its cashier, who had no express authority to make the guarantee, and whose authority to do so cannot be implied. It is the plaintiff's misfortune that it was not better advised as to the law when in reliance upon the letter of the cashier as the guaranty of the Angier Bank and Trust Co., it shipped the stone upon Cole's order. The judgment is amply supported by the authorities and is
Affirmed.