IRA WILLIAMS, APPELLANT, v. THE RAVANNA BANK ET AL., RESPONDENT.*

Kansas City Court of Appeals. November 8, 1926.

*Corpus Juris-Cyc References; Banks and Banking, 7CJ, section 158, p. 549, n. 54; section 160, p. 549, n. 71; section 163, p. 557, n. 45; Evidence, 22CJ, section 85, p. 148, n. 67; Frauds, Statute of, 27CJ, section 78, p. 172, n. 19.

*Thompson & Thompson, Roger Miller* and *Scott J. Miller* for appellant.

*Hyde & Hyde,* and *Ed. C. Hyde* for respondents.

BLAND, J.—This is an action based upon alleged fraudulent representations made by the defendant, John R. Weaver, cashier of defendant bank, concerning the solvency of one Charles Weaver. At the conclusion of all the testimony the court at the defendants' request instructed the jury to find for them resulting in a verdict as directed, and plaintiff has appealed.

The facts show that about May 7, 1923, defendant Weaver solicited plaintiff to buy some of the notes held by the bank. The bank held a note of one Charles Weaver, uncle of the cashier, in the sum of $2000. The cashier persuaded plaintiff to buy one-half of this loan by having said Charles Weaver, who consented to the new arrangement, execute a note in the sum of $1000. The space for the name of the payee in the latter note was left in blank, the name of plaintiff's daughter being inserted afterwards as payee by the cashier at plaintiff's request. The $1000 thus obtained from plaintiff was credited by the cashier upon the $2000 note of Charles Weaver. While plaintiff's check was made out to Charles Weaver, the latter did not see the check but his name was endorsed on it by the cashier without express authority of Charles Weaver but, apparently, by his implied authority.

When the cashier, who had been the only active officer of the bank in carrying on its affairs, solicited plaintiff to buy some of the bank's notes, he told plaintiff that the "deposits at the bank were running low" and it would help out the bank if he would buy some of the bank's notes or lend the money to the bank. Plaintiff told him that he would take $1000 of the notes. The cashier then suggested that he take the note of Charles Weaver for $1000, stating that if he would take such a note the bank would "take it up again when it was due." Plaintiff had no conversation with Charles Weaver but the cashier told him that Weaver's note was a good one and he relied upon this statement in lending the money. Plaintiff testified that he was not lending money at that time but finally concluded to make this loan upon the cashier's urgent request. He testified, "I concluded that I would just let the bank have that one thousand dollars," that the cashier said that the bank would "take it up when their deposits ran up or when it was due if I wanted to." After plaintiff parted with his money he found that Charles Weaver was insolvent. The note was made payable six months after date. Plaintiff prior to the time

the note fell due asked the bank to pay it when it became due. He did not ask Charles Weaver to pay it until sometime during the following January when said Weaver paid the interest on the note. About the time the note was due plaintiff asked the cashier to take it up but the latter said he couldn't do it at that time, stating that the bank's "exchange wasn't up enough."

The cashier, testifying for defendants, denied making the representations claimed by plaintiff. He stated that he had authority from the board of directors "to make time deposits or loan money" and to give notes of the bank for money borrowed.

The petition was in two counts but plaintiff dismissed the first and the case went to trial on the second, which alleges that—

". . . on May 7, 1923, the defendant, John R. Weaver, who at the time was cashier of the Ravanna Bank in Mercer county, Missouri, solicited the plaintiff to loan the sum of one thousand dollars to Charles Weaver and stated to the plaintiff that Charles Weaver was indebted to the bank in the sum of two thousand dollars and could not raise the money, but was perfectly good; and that the bank was hard pressed for money and that the payment of one thousand dollars of Charles Weaver's indebtedness to the bank, would help the bank in reducing its loans and that the defendant, the Ravanna Bank, of which defendant, John R. Weaver, was the executive officer and cashier, would take up said note at its maturity, if the said Charles Weaver failed to pay the same.

"And defendant further stated to the plaintiff that Charles Weaver was their customer and that he knew the financial condition of said Charles Weaver and that the said Charles Weaver was perfectly good and solvent.

"And plaintiff states that the defendant, John R. Weaver, executive officer of the Ravanna Bank, knew at the time he made the statement to this plaintiff, that Charles Weaver was financially insolvent and largely in debt and was being hard pressed by his creditors, and was wholly unable to meet his obligations.

"And plaintiff charges the facts to be that the defendant falsely and fraudulently represented to this plaintiff that Charles Weaver was then solvent and plaintiff states that at the time the statement was made by the executive officer of said bank, he knew that Charles Weaver was insolvent and being hard pressed by his creditors and that he was unable to pay his obligations and made the false statement knowingly and unlawfully for the purpose of obtaining plaintiff's money in the sum of one thousand dollars, to avoid the bank losing all of the obligations of the said Charles Weaver to the said Ravanna Bank."

The petition then alleges that plaintiff had no knowledge of the financial condition of Charles Weaver but relied upon the statements made to him by the cashier of the bank; that plaintiff had parted with

his one thousand dollars which had resulted in a credit of that amount upon the $2000 note of Charles Weaver; that the $2000 note at the times mentioned was of no value and that he demanded payment of his $1000 of the bank and from the defendant John R. Weaver, which payment had been refused.

It is urged that the court properly sustained the demurrer to the evidence for the reason that the representations alleged in the petition to have been made were not made in writing and therefore came within the provisions of the Statute of Frauds, section 2172, Revised Statutes 1919, which reads as follows:

"No action shall be brought to charge any person upon or by reason of any representation or assurance made concerning the character, conduct, credit, ability, trade or dealings of any other person, unless such representation or assurance be made in writing, and subscribed by the party to be charged thereby, or by some person thereunto by him lawfully authorized."

This statute has been held to be complete bar to a suit for damages for false representations made to plaintiff that the party to whom the money was lent by plaintiff was solvent and of good credit. [Knight v. Rawlings, 205 Mo. 412; Weil v. Schwartz, 21 Mo. App. 372, 385.] However, it would seem that the representations herein were made for the purpose of procuring a benefit for the defendant bank but defendants claim that this is of no consequence, citing the case of Mann v. Blanchard (Mass.), 2 Allen 386, and cases of similar import. In that case it was said, l. c. 387, 388—

". . '. Where the benefit to be obtained by the defendant is to be gained wholly through the credit given to another in consequence of the alleged representations, the primary object of those representations must be regarded as the procurement of the credit." [See, also, Cook v. Churchman (Ind.), 3 N. E. 759; Kimball v. Comstock (Mass.), 14 Gray 508; Hunter v. Randall (Me.), 16 Am. R. 490; Brown v. Kimball, 84 Me. 280.]

However, the benefit to the bank was not obtained solely as the result of the transaction but was gained directly through the contract itself and a very interesting question arises as to whether this would not make the case an exception to the general rule stated in the authorities cited, supra (see Ruddy v. Gunby, 180 S. W. 1043, 1045), provided that the contract pleaded in the petition wherein it was agreed that the bank would pay the one thousand dollars if Charles Weaver did not, in view of its being hard pressed for money, is not itself within the Statute of Frauds, section 2169, Revised Statutes 1919. If it was, then it could not have been relied upon by plaintiff as he is presumed to have known the law to the effect that an oral promise to pay the debt of another is worth nothing and he could have given no credit to the bank on account of such a promise and

therefore the assertion of the cashier that the bank would pay the note if Charles Weaver failed to do so, could be considered in no other light than a statement on the part of the cashier to more strongly express his opinion of Charles Weaver's circumstances. We need not go into these matters for the reason that the petition clearly did not state a cause of action for another reason, and the court properly sustained defendants' demurrer to the evidence.

The petition wholly fails to show that the cashier had authority to make the representation. It is held that a cashier of a bank has no implied authority to bind it by representations as to the credit of third parties and authorization on the part of the bank is necessary to be shown before it will be bound by such representations. [Crawford v. Bank, 67 Mo. App. 39; Lemke v. Bank (Wis.), 208 N. W. 946; Sedgwick v. National Bank, 295 Mo. 230; Liggett v. Bank, 233 Mo. 590, 605.] The cashier of the bank had no implied authority to make the contract agreeing to pay the note in case Charles Weaver failed to do so and the added circumstance of the making of this contract makes no difference in the rule (Bacon, Dawson & Co. v. Bank, 79 Mo. App. 406), and the fact that the bank obtained a benefit by reason of the contract and representations of the cashier does not affect the question of the cashier's implied authority. In the case of Indiana Quarries Co. v. Bank & Trust Co., 129 S. W. 619, 622 (N. C.), the court, quoting from two well-known authorities, said—

" 'In the absence of an express grant of authority, a banking corporation, as a rule, has not the power to become the guarantor or surety of the obligation of another person, or to lend its credit to any person. No such power being conferred by the National Bank Act, this applies to national banks ' [Tiffany on Banks and Banking, p. 284.] 'Banking Associations from the very nature of their business are prohibited from lending credit.' [Magee on Banks and Banking, p. 466.] 'It is not within the ordinary functions of a bank to lend its credit, and so it cannot become an accommodation endorser. Neither is a bank authorized to become a guarantor, except where it is necessary to protect its rights where the guaranty relates to commercial paper and is an incident to the purchase and sale thereof, or when the guaranty is especially authorized by law.' [7 C. J. 595.] 'A banking corporation cannot lend its credit to another by becoming surety, indorser or guarantor for him.' [3 R. C. L., 425.] "

Commenting upon the case before it, the court further said—

"An exception has been made to the general proposition herein approved, where the bank enters into a guaranty for its own advantage as an incident to business in which it is authorized to engage (Tiffany on Banks and Banking, p. 285, and authorities cited), or where the bank has actually received benefit from one who has relied in good faith upon the guaranty. [Creditors' Claim Co. v. Northwest L. &

T. Co., 81 Wash.; 247, 142 P. 670, L. R. A., 1917A, Ann. Cas. 1916D, 551.] This exception will not avail the plaintiff in the instant case, for, while the transaction on its face purports to be for the advantage of defendant as an incident to the erection of a building for bank purposes, the making of a guaranty, even if same is within the power of the bank, cannot be held to be within the implied powers of a cashier. If upon the facts appearing from the evidence in this case the defendant, by its board of directors, whose powers are larger than those of a cashier (Public Laws, 1921, c. 4, # 48), had authority to guarantee payment for stone shipped to Cole, it does not follow that the cashier, without express authority from the board of directors, was authorized to bind the corporation by a guarantee. Clearly a cashier has no implied power to make a contract binding on the bank which the bank itself has power to make only under special circumstances.''

Even though the bank in the contract described in the petition in the case at bar may have obtained some benefit by reason of the agreement alleged to have been made by defendant's cashier and plaintiff, and for that reason the bank through its board of directors may have had authority to have entered into a contract or authorized its cashier to enter into one of the nature described in the petition (questions we do not pass upon), the cashier had no implied authority to enter into such a contract and there is nothing disclosed in the petition to show that he had express authority to do so. In this connection we have not overlooked the fact that it was alleged that the cashier was the ''executive officer'' of the bank. What was meant by the use in the petition of the words ''executive officer,'' is not clear. It may be that if the bank had permitted the cashier to make such representations and contracts over a long period of time, or had allowed the cashier for many years to transact all of the business of the bank, it would be held that it had conferred upon him authority to do the things mentioned in the petition. [See Bank v. McCarthy, 7 Mo. App. 318, 325.] But there is nothing in the petition suggesting any such circumstances, it merely says that he was the executive officer of the bank, which is equivalent, at most, to no more than a statement that he was discharging the duties of the president of the bank at the time the deal was made. Usually the president of a corporation is its executive officer and if it could be said that the cashier was acting as president of the bank at the time of the transaction complained of, it would add nothing to defendants' allegations, as the president would have no more right to enter into such an agreement or make such representations than did the cashier, without express authority from the bank. [Sedgwick v. Bank, supra.] We are bound to conclude that the second count of the petition, which is the only part

of it left in the case, fails to state a cause of action and that the action of the court was proper. [Liggett v. Bank, supra.]

The facts taken in their most favorable light to plaintiff do not disclose any cause of action in favor of plaintiff against defendant, John R. Weaver. The Statute of Frauds, section 2172, Revised Statutes 1919, clearly applies as to this defendant. He received no benefit from the representations except such as might result to the bank by reason of the representations and as would accrue to him as a stockholder and officer of the bank, which from the authorities cited supra, would not be sufficient to take the case out of the Statute of Frauds. [See, also, Wells v. Prince (Mass.), 15 Gray 562; 27 C. J. 172.]

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.